901 A.2d 351

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. WAYNE E. CHAPLAND, DEFENDANT–RESPONDENT.

Argued April 4, 2006—Decided July 13, 2006.

*James L. McConnell,* Assistant Prosecutor, argued the cause for appellant (*Wayne J. Forrest,* Somerset County Prosecutor, attorney).

*Seon Jeong Lee,* Assistant Deputy Public Defender, argued the cause for respondent (*Yvonne Smith Segars,* Public Defender, attorney).

*Mary E. McAnally,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*Zulima V. Farber,* Attorney General, attorney).

Justice LaVECCHIA delivered the opinion of the Court.

A jury convicted defendant Wayne Chapland of first-degree robbery for a purse-snatching incident in which he simulated possession of a deadly weapon. The Appellate Division reversed the conviction because it found that the jury instruction on simulated possession of a weapon failed to convey that the jury was required to acquit defendant if it accepted his version of what took place. Defendant conceded that he snatched the purse but claimed that he neither had a weapon nor threatened the victim with anything that simulated a weapon.

According to the panel, in a simulated-possession case the threat to the victim must be linked to some "object" that the defendant either displays or uses in a way that suggests a deadly weapon to the victim. The court held that because defendant contended that his threatening words were accompanied only by his moving his hand behind his back as if to reach for an undisclosed object, the link to a deadly weapon was not made. No object simulating or suggesting a weapon was displayed to the victim and, thus, the jury should have been told that it must acquit defendant if it believed him.

We disagree and reverse. The jury charge adequately conveyed to the jury that it could have acquitted defendant. Moreover, there was sufficient evidence to sustain the jury's verdict of guilt. In a simulated-possession case, the jury may consider the

combined effect of a defendant's words and conduct or gestures when determining whether the combination would suffice to induce a victim's reasonable belief that the defendant possessed a deadly weapon when perpetrating a robbery. It is not necessary that the victim actually see some tangible item that is supposed to be the simulated weapon. In this case, there was a sufficient record to support a first-degree robbery conviction based on the simulated possession of a weapon.

## I.

On February 11, 2003, at approximately two o'clock in the morning, Chenalle Lee was walking home to her mother's house from a local pub. When she was about a block and a half from her destination, defendant "ran up behind [her] and started pulling on [her] pocketbook." As the two struggled over the purse, defendant demanded that Lee "[g]ive [him] her purse." As a result of that struggle, the shoulder strap on the purse broke and Lee fell to the sidewalk. Nonetheless, as she fell she continued to hold on to her purse.

What occurred next is a matter of dispute. Lee testified that, when she fell, defendant "dr[ew] back a little bit and whipped out a knife, like a pocket knife, [and] said 'Give me your purse, b*tch.' " Lee stated that defendant "wasn't up on [her] but he like pointed the knife out so [she] recognized he had a knife." Although she said that she could not see the handle of the knife, she heard the knife "click" open and saw its blade. Lee testified that she begged defendant, "can I get my license—just can I get my license out of my purse." He, however, replied "B*tch give me your purse before I cut you." Accordingly, she "tossed the purse to him," and he ran away.

Defendant was apprehended several weeks later, after Lee identified him from a photo array. In a voluntary recorded statement defendant admitted to taking Lee's purse, but he denied having a weapon. Rather, as he described the incident,

I just reached behind me ... and I said give me the pocketbook and she threw it at me and said is that what you want and ... when she threw it at me I grabbed you know and caught it and took off running.

The State charged defendant with first-degree armed robbery, contrary to *N.J.S.A.* 2C:15–1a. At trial, the following colloquy took place between Officer Hebbon, who interrogated defendant and recorded his voluntary statement, and the prosecutor:

Q: Did he indicate whether he had a weapon?

A: He—he said he didn't have a weapon.

Q: Did you indicate—did you ask him any questions, whether he tried to make it look to her like he had a weapon?

A: Yes.

Q: What did you ask him?

A: I asked him ... if he had a weapon, he said no, I then asked if he—if he did anything to—to make it look as if he had a weapon, and he said—he said yes, he said.

Q: What did he say he did?

A: He said he—he put his hand behind him as if he had a weapon. And—and gestur[ed] like he had a weapon.

Officer Hebbon added that no knife was recovered from defendant.

Defendant testified that Lee's account of the robbery was essentially correct "[e]xcept for [his] having a weapon." During defendant's cross-examination, he testified as follows:

Q: [On direct examination, y]ou indicated that you didn't have a weapon, correct?

A: Yes.

Q: But you told the officer you made—he asked did you make any indication or make it look like you had a weapon, and you said yes.

A: Correct.

Q: You said you made it look like you had something and "she threw the pocketbook at me." Is that correct?

A: Yes.

. . . .

Q: Now, why did you tell the officer that before she gave you the pocketbook you made an indication to make it look like you had a weapon?

A: The only thing I did was put my hand behind my back.

Q: Okay. So when she fell and you said, "Give me the pocketbook", there was something more that happened before she gave up the pocketbook; is that correct?

A: Yes.

Q: She wasn't giving it up until you threatened her with a weapon, correct?

A: I didn't threaten her with a weapon, no.

Q: But you wanted to put that thought in her mind, that you had a weapon, didn't you?

A: Yes.

Q: You wanted her to think that you had a weapon so she wouldn't fight with you anymore and you could get what you were looking for. Isn't that fair?

A: I guess you could say that, yes.

. . . .

Q: And you meant ... to shake her up, you wanted her to be fearful that you were going to use a weapon on her. That's why you made it look like you had a weapon. Correct?

A: What I did was wrong but all I did was put my hand behind my back.

On re-direct examination, defendant added that while putting his hand behind his back, he "simultaneous[ly]" stated "Give me your pocketbook, bitch."

After hearing from both parties in respect of the jury instruction on armed robbery, the court gave the following charge, which is set forth in full.

A section of our statute provides that robbery is a crime of the second degree except that it is a crime of the first degree if the robber is armed with or uses or threatens the immediate use of a deadly weapon.

In this case it is alleged that the defendant was armed with a deadly weapon while in the course of committing a robbery.[1]

In order for you to determine the answer to this question, you must understand the meaning of the term deadly weapon. A deadly weapon is any firearm or other weapon, device, instrument, material or substance whether animate or inanimate which in the manner it is used is intended—excuse me, is intended to be used or is known to be capable of producing death or serious bodily injury, or which in the manner it is fashioned would lead the victim to reasonably believe it is capable of producing death or serious bodily injury.

In this case the State alleges that the defendant was armed with a knife. You must determine if this object qualifies as a deadly weapon, and if the State has

---

[1] The trial court submitted to the jury both versions of what allegedly took place between defendant and Lee, namely that defendant was armed with a knife and, if the jury found that defendant did not actually possess a knife, the alternative that he simulated the possession of a knife. Defendant challenges only the portion of the charge that concerned the simulated possession of a weapon.

proven beyond a reasonable doubt that defendant used it in the course of committing this robbery.

In the alternative the State alleges that if you find that the defendant did not *actually possess a deadly weapon, but instead threatened the use of the*—excuse me, threatened the immediate use of such a weapon, and engaged in conduct or gestures which simulated possession of a deadly weapon, and which would lead a reasonable person to believe defendant possessed such a weapon beyond a reasonable doubt.

First, I must explain to you what a deadly weapon is. Again, I pointed out a deadly weapon is any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or intended to be used is known to be capable of producing death or serious bodily injury, or which in the manner it is fashioned would lead the victim to reasonably ... believe it to be capable of producing death or serious bodily injury.

"To simulate" means to assume the outward qualities or appearance of often with the intent to deceive. It is a feigned, pretended act, usually to mislead or to deceive.

The State does not have to prove that the defendant actually possessed a real deadly weapon, rather the State must prove beyond a reasonable doubt that the defendant led Chenalle Lee to reasonably believe by words and conduct or gestures that the defendant possessed such a weapon.

It is not sufficient that the defendant only made a threat or reference to a weapon alone, in other words the State must prove beyond a reasonable doubt that the defendant not only [1] threatened the immediate use of a deadly weapon but [2] it must also prove beyond a reasonable doubt that the defendant engaged in conduct or gestures which would lead a reasonable person to believe that the defendant possessed some tangible object that a reasonable person would believe to be a dedly [sic]—a deadly weapon.

In this case the State alleges in the alternative that the defendant had a tangible object, that the victim believed to be a knife, and stated: "Bitch, give me your pocketbook" or "Bitch, give me your pocketbook or I'll cut you."

The defense alleges that Mr. Chapland did not possess any tangible—any such tangible object and merely placed his hand behind his back.

It is you who must determine whether the State has proven beyond a reasonable doubt that the combination of words and conduct or words and gestures created a reasonable belief in the victim Chenalle Lee to believe that the defendant possessed some tangible object that a reasonable person would believe to be a deadly weapon capable of causing death or serious bodily injury.

Again, "serious bodily injury" means injury which creates a substantial risk of death or which causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ—or organ.

To summarize, if you find the State has not proven beyond a reasonable doubt any element of the crime of robbery as I have defined the crime to you, then you must find the defendant not guilty.

> If you find that the State has proven beyond a reasonable doubt that the defendant committed the crime of robbery as I have defined that crime to you, but if you have—but if you find that the State has not proven beyond a reasonable doubt that the defendant was armed with or used or threatened the immediate use of a deadly weapon or engaged in conduct or gestures which would lead a reasonable person to believe that the defendant possessed some tangible object that a reasonable person would believe to be a deadly weapon—a weapon at the commission of the crime of the robbery, then you must find the defendant guilty of robbery in the second degree.
>
> If you find the State has proven beyond a reasonable doubt that the defendant committed the crime of robbery and was not[2] armed with a deadly weapon, or used or threatened the immediate use of a deadly weapon, or engaged in conduct or gestures which would lead a reasonable person to believe that the defendant possessed some tangible object that a reasonable person would believe to be a deadly weapon at the time of the commission of the robbery, then you must define—you must find the defendant guilty of robbery in the first degree.

Neither party objected to the instruction given.[3]

After the jury began deliberations, it asked the court two questions: (1) "[ ]is perception/appearance of a weapon that the victim feels can inflict deadly injury, second degree robbery;" and (2) "can we see the written description of both first and second degree robbery?" In response to both questions, the trial court re-read the first- and second-degree robbery instruction.

The jury convicted defendant of first-degree robbery and the court imposed a sentence of ten years imprisonment with an 85% parole disqualifier. On appeal, defendant asserted that the charge on simulated possession of a deadly weapon was erroneous and, in

---

[2] When initially delivering the instruction, the trial court erred by including the word "not" as indicated. When the court recharged the jury (in response to two questions from the jury), it read the charge correctly without the word "not."

[3] During the jury charge conference, defendant requested that the court tailor the model jury charge on first-degree robbery to include his factual version that "he merely placed his hand behind his back." As the charge reflects, the court made that adjustment. Defendant also requested that the court insert the phrase "a tangible object simulating" before the phrase "a deadly weapon" in the proposed charge. The charge also was adjusted to accommodate that request. Finally, after delivering the instruction to the jury, the court asked whether there were any objections to the charge as given or additions that counsel wanted the court to present to the jury. Both counsel responded in the negative.

an unpublished per curiam opinion, the Appellate Division agreed, applying a plain error standard of review. The court found that

the instruction given did not adequately explain to the jury that if it credited defendant's version of the incident, it must conclude that the State had failed to establish the requisite element of first-degree robbery that defendant had displayed an object in a manner that would lead the victim to reasonably believe it to be capable of producing death or serious bodily injury, even if the jury also found that defendant had threatened the use of, or referred to, a deadly weapon. Here, if the jury accepted that portion of defendant's testimony that he simply placed his arm behind his back, that would not constitute the requisite display of an object. . . .

Although we recognize that a body part, when combined with threatening words or gestures, may be considered to be a qualifying "object" that may simulate use of a deadly weapon in connection with a robbery, there must nevertheless be a "link between the threat and the object viewed by the victim."

. . . .

Here, if defendant's version was credited by the jury, that link was absent.

[(citations omitted).]

The court reversed defendant's conviction and remanded for a new trial. We granted the State's petition for certification, *State v. Chapland*, 185 *N.J.* 389, 886 *A.*2d 660 (2005), and now reverse.

## II.

Robbery is elevated to a crime of the first degree when the defendant is "armed with, or uses or threatens the immediate use of a deadly weapon." *N.J.S.A.* 2C:15–1b.[4] In 1981, the Legislature amended the definition of a "deadly weapon" in *N.J.S.A.* 2C:11–1c to add simulation of a deadly weapon, enabling a defendant's conviction of first-degree armed robbery to be based on either possession of an actual deadly weapon or simulation of the possession of such a weapon. A "deadly weapon" is defined as

---

[4] The statute states:

Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon. [*N.J.S.A.* 2C:15–1b.]

any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or intended to be used, is known to be capable of producing death or serious bodily injury or which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury.

[*N.J.S.A.* 2C:11–1c.]

Four key appellate decisions in this State have examined records in which a charge of armed robbery was predicated on the simulated possession of a weapon.[5] Because in this appeal we must determine whether defendant's conviction can be squared with the statutory language as it has been applied, we turn to those prior simulated-possession cases.

The first concerned a sufficiency-of-the-evidence issue. *See State v. Hutson,* 107 *N.J.* 222, 226–27, 526 *A.*2d 687 (1987). The defendant, Donald Hutson, and a friend hailed a taxicab at Newark Penn Station. *Id.* at 223, 526 *A.*2d 687. According to the taxicab driver, as he approached the requested destination one of the passengers demanded the driver's money. *Id.* at 223–24, 526 *A.*2d 687. When the driver ignored that request, one of the passengers said that he had a gun, which was described by the other passenger as "a Magnum." *Id.* at 224, 526 *A.*2d 687. Although the driver never saw a weapon, he did observe one passenger holding a newspaper during the incident. *Id.* at 224, 526 *A.*2d 687.

The Court noted that the statutory definition of a "deadly weapon" could be "parsed into two elements," *id.* at 227, 526 *A.*2d 687, and identified them as follows: "[the] defendant must use a 'firearm or other weapon, device, instrument, material or substance;' ... [and] the manner in which that item is fashioned must

---

[5] Under the prior version of *N.J.S.A.* 2C:11–1c, actual possession of a deadly weapon was necessary for conviction of armed robbery. *See State v. Butler,* 89 *N.J.* 220, 228, 445 *A.*2d 399 (1982) (holding that actual weapon was required under earlier definition of "deadly weapon"). By the time our decision in *Butler* issued, the Legislature already had amended the definition of a "deadly weapon" (*L.* 1981, *c.* 384, effective January 4, 1982) to include simulated possession of a deadly weapon.

lead the victim reasonably to believe it capable of producing death or serious bodily injury." *Ibid.* The newspaper that the taxicab driver observed could satisfy the definition of dangerous weapon so long as "it were fashioned so as to animate the requisite reasonable belief in the victim." *Id.* at 228, 526 *A.*2d 687. We held that based on the record presented the defendant could not be found guilty of first-degree robbery because the State did not present any evidence that the newspaper was fashioned or held in such a manner that would create a reasonable impression that it either was a weapon or concealed a weapon. *Id.* at 228–29, 526 *A.*2d 687. The record lacked any "link between the threat and the object viewed by the victim," *id.* at 228, 526 *A.*2d 687; however, we added that "[h]ad the newspaper been presented to the victim so as to create the reasonable impression that it concealed a dangerous object, the definition of dangerous weapon would have been satisfied." *Id.* at 228–29, 526 *A.*2d 687.

Later, the Appellate Division decided *State v. LaFrance,* 224 *N.J.Super.* 364, 372, 540 *A.*2d 879 (App.Div.1988), *rev'd on other grounds, aff'd o.b. on this issue,* 117 *N.J.* 583, 569 *A.*2d 1308 (1990), which also involved an appeal on the sufficiency of the evidence. In *LaFrance,* the defendant entered the home of his victims and told them that he had a gun, positioning his right hand inside his coat such that it created a bulge. *Id.* at 367–68, 540 *A.*2d 879. The defendant also made several threats "to blow the [victims'] brains out" if they failed to obey his orders. *Id.* at 372, 540 *A.*2d 879. The Appellate Division held, and we affirmed, that the "[d]efendant's use of his hand to simulate a gun and the reasonable sensory impression thereby created in the victims satisfied the statutory requirements for a first degree robbery offense." *Ibid.* (citations omitted). The panel also examined the trial court's instruction to the jury on the armed robbery charge and stated that

[w]hile the jury instruction[ ] did not contain a detailed explanation of the subjective standard set forth in *N.J.S.A.* 2C:11–1c pertaining to the reasonable belief of the victims that the object possessed by defendant was capable of producing death or serious bodily injury, we are satisfied that the charge as a

whole accurately reflected the pertinent law. Surely, the instruction that "it is the intent of the law to provide the same sanction for robbery committed by simulating the use of a weapon as for one who perpetrates a robbery with an actual firearm" adequately conveyed to the jury that a conviction of first degree robbery required their finding that the R's had a reasonable belief that defendant possessed a gun. [*Id.* at 372–73, 540 A.2d 879 (citation omitted).]

In *State v. Huff*, 292 *N.J.Super.* 185, 678 A.2d 731 (App.Div. 1996), *aff'd o.b.,* 148 *N.J.* 78, 689 A.2d 723 (1997), the Appellate Division and this Court again addressed whether the circumstances of a simulated weapon were sufficient to sustain the defendant's conviction of first-degree robbery. *Huff* involved a late-night robbery of a 7–Eleven store. *Id.* at 188, 678 A.2d 731. During the robbery, the defendant wore a dark stadium coat and dark shirt and patted his waist as he told the employee at the store's register, "I have a gun here." *Ibid.* A majority of the Appellate Division found that "it was reasonable for the cashier to accept defendant's simulation of possession of a gun by patting his waist, covered by a loose fitting stadium coat, proclaiming 'I have a gun here.'" *Id.* at 190, 678 A.2d 731.

Although *Huff* did not concern a challenge to the adequacy of the jury instruction on the armed-robbery charge, the Appellate Division opinion, which we affirmed, approvingly noted the court's instructions to the jury on armed robbery, *ibid.,* and recited the court's response to a specific question about the standard required for simulation:

[T]he Defendant must use a firearm or other weapon, device, instrument, material or substance, and the manner in which that item is fashioned must lead the victim reasonabl[y] to believe it capable of producing death or serious injury.

The victim need not see the device or instrument so long as there is some device used by the defendant that is fashioned to create in the victim the reasonable sensory impression that the object is capable of causing serious bodily harm or death.

[*Id.* at 190–91, 678 A.2d 731.]

Most recently, the Appellate Division considered an appeal involving the instruction that should be given when an armed-robbery charge is based on simulated possession of a deadly weapon. *State v. Harris,* 357 *N.J.Super.* 532, 545, 816 A.2d 171 (App.Div.2003). In *Harris,* the victim had returned home from

work to discover that his apartment had been burglarized. *Id.* at 535, 816 *A.*2d 171. A short time later, the victim and a group of men from the apartment complex, while looking for the perpetrator, came upon the defendant in some nearby woods, drinking a beer and wearing a jacket owned by the victim. *Id.* at 535–36, 816 *A.*2d 171. When the victim shouted that the defendant was wearing his jacket, the defendant attempted to punch the victim and a struggle ensued, during which the defendant stated, "You don't know who I am. You don't know my background. Um, I got a gun on me. I'll shoot you. I'll kill you." *Id.* at 536, 816 *A.*2d 171.

At trial, the trial court instructed the jury on the armed robbery charge, as follows:

> Now members of the jury, a portion of our statute provides that a robbery is a crime of the second degree except that it is a crime of the first degree if the robber is either armed with or uses or threatens the immediate use of a deadly weapon. In this case the State's allegation is that ... there was a threat of the use of a gun and, therefore, the State's alleging the defendant threatened the immediate use of a deadly weapon.
>
> In order for you to determine and answer the question you must understand the meaning of deadly weapon. A deadly weapon is any firearm, or any other weapon, device, instrument, material or substance which in the manner it is used or intended to be used, is known to be capable of producing death or serious bodily injury, or in which the manner it is fashioned would lead the victims reasonably to believe that it was capable of producing death or serious bodily injury.
>
> The State does not have to prove that the defendant actually had a real gun. As I indicated to you, the definition of a deadly weapon provides that a deadly weapon includes the use of any object which, in the manner it is fashioned, would lead the victim reasonably to believe that it was capable of producing death or serious bodily injury. Therefore, if that State has proven, beyond a reasonable doubt, that the defendant, through his words and gestures, intentionally lead [the victims] to reasonably believe that [he] had a real gun, then the State has satisfied the deadly weapon element of the crime to elevate it to the first degree.
>
> [*Id.* at 544–45, 816 *A.*2d 171.]

The *Harris* panel found that charge to be inadequate because it did not properly inform the jury about the proof requirements for armed robbery when based on the simulated possession of a weapon.

> This instruction did not adequately explain to the jury what the State must prove when an armed robbery charge is predicated upon alleged simulated possession of

a deadly weapon. The trial court did not tell the jury, in accordance with *Hutson*, that "[a] threat or reference to a gun alone is not enough[,]" and that "there must be some tangible object possessed by the defendant that the victim believes to be a deadly weapon[,]" for a defendant to be found guilty of armed robbery. The court's instruction that the State had to prove "that the defendant, through his words and gestures, intentionally led [the victim] to reasonably believe that [he] had a real gun" was too vague, because it failed to convey to the jury that the only kind of "gesture" that can satisfy the requirements of *N.J.S.A.* 2C:11-1c is one which simulates possession of a deadly weapon, such as creating a bulge by placing a hand in a pocket, as in *LaFrance,* or patting the waist area of a bulky coat, as in *Huff.*

[*Id.* at 545, 816 *A.*2d 171 (citation omitted).]

In the wake of the *Harris* decision, the Model Jury Charge on Robbery in the First Degree was revised to address simulated weapon situations. *Model Jury Charges (Criminal),* Robbery in the First Degree (2003). Prior to *Harris,* no model charge existed for such circumstances. The trial court in this matter quoted most of its instruction from the Model Jury Charge. Four times the court deviated from the Model Charge by replacing the phrase "defendant possessed a deadly weapon" with the phrase "defendant possessed some tangible object that a reasonable person would believe to be a deadly weapon." Significantly, the Model Jury Charge contains a footnote that identifies the question that has arisen in this appeal.

It is unclear whether, in addition to words and conduct or gestures, defendant actually has to possess a "tangible object," as suggested by *Harris, supra,* and *State v. Hutson,* 107 *N.J.* 222, 228, 526 *A.*2d 687 (1987); whether an object is necessary at all, as discussed by the majority and dissenting opinion in both the Appellate Division and Supreme Court decisions in *State v. Huff,* 292 *N.J.Super.* 185, 189-92, 678 *A.*2d 731 (App.Div.1997 [1996]), *aff'd o.b.,* 148 *N.J.* 78, 689 *A.*2d 723 (1997); or whether the use of a hand by placing it in pocket or under or on a coat or behind a back is sufficient to constitute "some tangible object" as mentioned in *Harris, supra.*

[*Model Jury Charges (Criminal),* Robbery in the First Degree (2005) (updating 2003 version but leaving unchanged that portion of charge addressing simulated possession).]

## III.

### A.

This appeal arose based on defendant's belated challenge to the jury instruction. Because defendant did not object to the

court's instruction when it was delivered, a plain error standard applies. *R.* 2:10–2; *State v. Bunch*, 180 *N.J.* 534, 541, 853 *A.*2d 238 (2004). As applied to a jury instruction, plain error requires demonstration of "legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." *State v. Hock*, 54 *N.J.* 526, 538, 257 *A.*2d 699 (1969), *cert. denied*, 399 *U.S.* 930, 90 *S.Ct.* 2254, 26 *L.Ed.*2d 797 (1970). The alleged error is viewed in the totality of the entire charge, not in isolation. *State v. DiFrisco*, 137 *N.J.* 434, 491, 645 *A.*2d 734 (1994). In addition, any finding of plain error depends on an evaluation of the overall strength of the State's case. *See State v. Cotto*, 182 *N.J.* 316, 326–27, 865 *A.*2d 660 (2005).

### B.

Defendant's claimed error is that the charge should have included an express direction to the jury that it must acquit defendant if it believed his version of the robbery, specifically his version of his words and conduct or gestures in respect of the alleged simulation of a deadly weapon. He argues that because he never displayed to Lee any tangible object that she could have taken to be a deadly weapon, he could not be found to have simulated possession of a weapon and cannot be guilty of first-degree robbery.

Case law has not required, however, that defendant actually show a victim some object that the victim reasonably perceives to be a weapon. In *Hutson, supra*, we did not hold that the victim must see the supposed object hidden in the newspaper held by the defendant in order to reasonably believe that a defendant possessed a gun for purposes of a simulated weapon. 107 *N.J.* at 229, 526 *A.*2d 687. Rather, in explaining our difference with the Appellate Division, we clarified that the victim need not see a "concealed item" to reasonably believe that a weapon was present; it was sufficient that whatever allegedly "cloaked" the item could do so in a believable manner.

> Our disagreement with the Appellate Division is narrow, but critical: to the extent that the opinion of the court below may be read to suggest that a newspaper either fashioned to look like a weapon or held in such a manner as reasonably to lead a victim to believe that it concealed a weapon would not satisfy the statutory requirement of a deadly weapon, it is incorrect. Such evidence, had it surfaced in this case, would indeed have met the statutory definition[.]
>
> [*Id.* at 229, 526 *A.*2d 687.]

The Court further emphasized that it is the reasonable impression created by what is presented to the victim that is determinative in a simulated-possession case. *Ibid.*

*Huff* reinforced that the victim need not see a tangible concealed object, but rather that the combination of words and a defendant's gesture or action can establish the reasonable impression that the defendant possesses a deadly weapon. In *Huff, supra*, the defendant was wearing loose clothing that did not actually reveal any object at the location where he patted his waistband. 292 *N.J.Super.* at 190–91, 678 *A.*2d 731, *aff'd o.b.*, 148 *N.J.* at 78, 689 *A.*2d 723. The defendant's added assertion, "I've got a gun," in combination with his patting of his waist, during which the victim could see only the defendant's hand patting the area, created the overall simulation of a weapon. The defendant's loose-fitting coat made concealment of a possible weapon reasonably believable. There was no tangible object visible to the victim, however, except for the defendant's hand that moved to the area where the defendant wanted the victim's attention, bolstered by threatening words.

We recognize that the language of *N.J.S.A.* 2C:11–1c, and the legislative history of the provision, suggest the Legislature intended that, to be found guilty of armed robbery based on simulated possession of a weapon, a defendant would actually possess an object in the nature of a "device, instrument, material or substance." Office of the Governor, *News Release* at 1 (Jan. 4, 2002) (describing bill as "clarif[ying] that 'deadly weapons' used in the commission of certain crimes will include such items as toy guns and *other objects* which can be reasonably mistaken as a 'deadly weapon.'") (emphasis added); Assembly Judiciary, Law, Public Safety and Defense Committee, *Statement to Senate Bill No.*

*1511,* at 1 (Apr. 27, 1981) (stating that bill was enacted to "broaden the definition of the term 'deadly weapon' to include *objects* such as toy guns which, because of the way in which they are fashioned, would lead a victim reasonably to believe that *the object* is capable of producing death or serious bodily injury.") (emphasis added); *Sponsor's Statement to Senate Bill No. 1511,* at 1 (Oct. 6, 1980) ("This bill would broaden [the] definition to include *weapons,* because of the way in which they are fashioned, which the victim believes to be capable of producing death or serious bodily injury.") (emphasis added). Since the enactment of the statute, however, this Court has concluded that a first-degree robbery conviction may be based on the use of a hand or gestures, coupled with threatening words, simulating possession of a weapon. *See Hutson, supra,* 107 *N.J.* at 228–29, 526 *A.*2d 687; *Huff, supra,* 292 *N.J.Super.* at 190, 678 *A.*2d 731, *aff'd o.b.,* 148 *N.J.* at 78, 689 *A.*2d 723; *LaFrance, supra,* 224 *N.J.Super.* at 372, 540 *A.*2d 879, *rev'd on other grounds, aff'd o.b. on this issue,* 117 *N.J.* at 583, 569 *A.*2d 1308. Although it may be argued that those opinions have interpreted the statute more expansively than the Legislature originally intended, the Legislature is presumed to be aware of the judicial construction placed on an enactment. In this case, that construction is supported by a long period of legislative acquiescence or failure to amend the statute indicating agreement with the Court's holdings. *See Macedo v. Dello Russo,* 178 *N.J.* 340, 346, 840 *A.*2d 238 (2004); *see also Quaremba v. Allan,* 67 *N.J.* 1, 14, 334 *A.*2d 321 (1975).

## C.

In our view, the facts here are similar to those in *Huff* and convey the overall impression of simulating possession of a deadly weapon. Defendant was locked in a struggle to take his victim's pocketbook, which he had grabbed from her shoulder. When she would not let go of the purse, he pretended to reach for something behind his back, simultaneously threatening "Give me your pocketbook, bitch." He admitted that the impression that he

wanted to convey, from the timing and content of his gesture and words, was to have his victim think that he had a weapon. Although in *Huff* the defendant actually informed the victim of the type of weapon he allegedly had concealed in his waistband, the absence of that unequivocal statement identifying the type of weapon does not entitle defendant to acquittal. We think that it was permissible for a jury to find that a victim could form the reasonable impression that a weapon was concealed behind defendant. *Cf. Cranford v. State,* 377 *S.W.*2d 957, 958–59 (Tex.Crim. App.1964) (holding that evidence of defendant's opening of coat and moving hand in such manner as if to reach toward back pocket was sufficient to cause bank teller reasonably to believe defendant possessed pistol during robbery). An unequivocal or unambiguous simulation of a weapon possessed, as well as an ambiguous or equivocal gesture coupled with threatening words that complete the impression of a concealed weapon, can provide a sufficient factual basis for conviction of first-degree robbery.

Here, what Lee actually saw was defendant's hand moving behind his body. It was not described, even by defendant, as an innocuous movement, but as indicating that he was reaching for an item. The timing of defendant's quick movement as if to grab something concealed behind his body, for use directed against the victim with whom he had been struggling, coupled with the threatening demand, with epithet, that she release her purse, creates an overall impression of the threat of a weapon during this robbery in progress. We disagree that the trial court's instruction was erroneous because it did not instruct the jury that it must acquit defendant if it believed his "version" of the facts. His version includes his statements to the police and the totality of his testimony. Defendant was not entitled to have the jury directed to acquit based on that body of evidence.

That said, the charge certainly did not preclude the jury from finding in defendant's favor. The charge, in its totality, provided the jury with a fair statement of the law, molded by a presentation of the defendant's and State's version of the proofs. The jury

could have found defendant not guilty of first-degree robbery premised on the simulated possession of a deadly weapon. It determined otherwise and we will not disturb that finding.

## IV.

The judgment of the Appellate Division is reversed.

*For reversal*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE, RIVERA-SOTO—7.

*Opposed*—None.