**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2573-14T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RICKY BOOKER,

    Defendant-Appellant.

_____

Submitted May 10, 2017 — Decided August 3, 2017

Before Judges Lihotz and Whipple.

On appeal from Superior Court of New Jersey,
Law Division, Union County, Indictment No. 12-
10-0744.

Joseph E. Krakora, Public Defender, attorney
for appellant (John Douard, Assistant Deputy
Public Defender, of counsel and on the brief).

Grace H. Park, Acting Union County Prosecutor,
attorney for respondent (Milton S. Leibowitz,
Special Deputy Attorney General/Acting
Assistant Prosecutor, of counsel and on the
brief).

PER CURIAM

I.

Defendant Ricky Booker appeals from a November 10, 2014

conviction, following a jury trial, for first-degree armed

robbery, N.J.S.A. 2C:15-1(a)(1). The jury acquitted defendant on charges of third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d), and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d).[1] Defendant was sentenced to eighteen years, subject to the 85% period of parole ineligibility required by the No Early Release Act (NERA). N.J.S.A. 2C:43-7.2.

On appeal, defendant seeks a new trial, arguing the trial judge erred by failing to instruct the jury regarding the admission of a purported prior inconsistent statement by an eyewitness. Additionally, defendant suggests the verdict sheet erroneously caused the jury to return inconsistent verdicts; or, alternatively, the sentence imposed was manifestly excessive because aggravating factors were improperly applied. We are unpersuaded and affirm.

II.

In the early hours of April 19, 2012, Christopher Ruiz was walking down Second Street toward Grant Avenue in Plainfield, on his way to a park when a blue car pulled to the side of the road approximately thirty feet in front of him. When he was within ten

---

[1] Defendant was also indicted on other charges relating to a separate incident, which included two counts of murder. These charges were severed and tried separately.

feet of the vehicle, a man brandishing a large knife exited the passenger-side door and ordered Ruiz to hand over his money. The attacker wore a hairnet, which had "big holes" and did not obscure his face. Ruiz turned to flee, but tripped. While lying on the pavement, Ruiz assured his assailant the knife was unnecessary and he would hand over his cash without resistance. The man put his knee on Ruiz's chest, searched his pockets, and removed approximately $300, then ran back to the car, which pulled away toward Third Street.

Ruiz did not initially report the incident to police because he was afraid. Then he noticed the man in his neighborhood. In the two-and-a-half weeks following the robbery, Ruiz, on eight occasions, saw a man he believed was his attacker as well as the car driven on the day of the incident, which he noted was a blue Honda Civic. At one point, he informed police of the robbery and provided a physical description of his assailant, which included his race, height, hairstyle, clothing, and identifying tattoos. Further, Ruiz described the car as having a unique color, stating it was a sky blue or purple Honda, with New Jersey plates, ending in the letters "G" and "C." After seeing his attacker in a coffee shop, he stopped a patrol officer, who stated he should have reported the robbery earlier. Ruiz continued to see the man and the Honda at various places in his neighborhood. He was able to

record the entire license plate. Ruiz and a friend even followed the man, noting he entered a home on Jones Street.

On May 11, 2012, Ruiz saw a sign requesting information about defendant. Ruiz contacted the listed police officer, Plainfield Police Department Officer Charles Martina. Ruiz described his assailant, the vehicle used in the robbery, the car's license plate, and the home he saw the man enter.[2] The police investigation determined the residence belonged to defendant's aunt and the vehicle was owned by defendant's girlfriend.

On May 16, 2012, Ruiz returned to the police station where he gave a formal statement to Officer Martina and identified defendant in a photo array. Accompanied by Officer Martina, Ruiz identified the blue Honda Civic, as it was parked in the lot of defendant's girlfriend's place of employment. Martina obtained a search warrant for the vehicle, which he executed. Inside he found defendant's birth certificate and a job application bearing his name from the glove box, a white T-shirt and blue jeans from the trunk, and a hairnet matching Ruiz's description of the face

---

[2] Defendant argued at trial and implicitly maintains, he was identified as a suspect because he was already a suspect in an unrelated crime. In support, defendant offers the street sign Ruiz used to contact Officer Martina was specifically seeking information about defendant and may have impressed Ruiz with confirmatory bias when it came time for him to make his identification using the photo array. Mention of the other crime, a murder, was excluded at trial as prejudicial.

covering worn by his assailant on the passenger's seat. Police arrested defendant.

During the August 2014 trial, Ruiz identified defendant in court. He detailed the events of the robbery, defendant's physical actions of pinning him down and searching his pockets, and the use of the blue Honda. Ruiz also described each instance when he saw defendant following the robbery. In addition to Ruiz's statements about seeing defendant in or near the vehicle several times following the robbery and his observations of the license plate, the jury heard defendant's birth certificate was found in the vehicle along with the hairnet allegedly used in the crime. No weapon was located or presented at trial.

The jury returned a conviction for armed robbery, but acquitted defendant of the weapons charges. On August 6, 2014, Judge Joseph P. Donohue applied aggravating factors (3), (6), and (9) and found no mitigating factors. He imposed an eighteen-year sentence, subject to NERA.

On appeal, defendant argues:

> POINT I
>
> THE TRIAL COURT ERRED BY FAILING TO INSTRUCT THE JURY THAT RUIZ'S PRIOR INCONSISTENT STATEMENTS IN POLICE WITNESSES' REPORTS WERE ADMISSIBLE AS SUBSTANTIVE EVIDENCE. (Not Raised Below).

POINT II

BECAUSE THE VERDICT SHEET FAILED TO SPECIFY
THE DEADLY WEAPON ALLEGEDLY USED IN THE
ROBBERY, AND THE JURY ACQUITTED MR. BOOKER OF
THE ONLY CHARGES OF WEAPONS POSSESSION, THE
"DEADLY WEAPON" ELEMENT OF THE FIRST-DEGREE
ROBBERY, THERE WAS INSUFFICIENT EVIDENCE FOR
THE ROBBERY CONVICTION.

POINT III

DEFENDANT'S SENTENCE IS MANIFESTLY EXCESSIVE
AND UNDULY PUNITIVE BECAUSE IT IS GROUNDED ON
IMPROPER FINDINGS REGARDING AGGRAVATING
FACTORS.

We address each argument.

### III.

For the first time on appeal, defendant suggests the jury charge was deficient. We find the argument unavailing.

A defendant is required to challenge jury instructions at the time of trial. Failure to do so is considered a waiver of the right to contest the instructions on appeal. See State v. Adams, 194 N.J. 186, 206-07 (2008); see also R. 1:7-2 (requiring jury instructions to be challenged at trial). Therefore, we reverse only in the presence of plain error, that is, error "clearly capable of producing an unjust result." Adams, supra, 194 N.J. at 207; see R. 2:10-2 (stating absent objection, reversal is warranted when the error shown to be "clearly capable of producing an unjust result"). More specifically,

not "any" possibility can be enough for a rerun of the trial. The possibility must be real, one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.

[State v. Macon, 57 N.J. 325, 336 (1971).]

"In the context of a jury charge, plain error requires demonstration of a '[l]egal impropriety . . . prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" State v. Burns, 192 N.J. 312, 341 (2007) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)). The allegation of error must be assessed in light of "the totality of the entire charge, not in isolation." State v. Chapland, 187 N.J. 275, 289 (2006). While an erroneous jury charge may be a "'poor candidate[] for rehabilitation' under the plain error theory," Jordan, supra, 147 N.J. at 422-23 (quoting State v. Simon, 79 N.J. 191, 206 (1979)), we nonetheless consider the effect of any error in light "of the overall strength of the State's case," Chapland, supra, 187 N.J. at 289. Moreover, the failure to "interpose a timely objection constitutes strong evidence that the error belatedly raised [] was actually of no moment." State v. White, 326 N.J. Super. 304, 315 (App. Div. 1999), certif. denied, 163 N.J. 397 (2000); see also State v. Morais, 359 N.J. Super. 123,

134-35 (App. Div. 2003) ("Where there is a failure to object, it may be presumed that the instructions were adequate.").

Defendant states Officer Martina's report, prepared when he first interviewed Ruiz, omitted any mention the attacker's face was covered. Defendant therefore argues Ruiz's trial testimony asserting his attacker wore a mask was inconsistent with his initial police statement. However, during cross-examination Officer Martina recalled Ruiz had described his attacker as wearing a mask at the time during his initial statement, and he acknowledged the omission was his in the police report.

Generally, N.J.R.E. 803(a)(1) allows the use of prior inconsistent statements as substantive evidence, if the statement would have been admissible. State v. Cabbell, 207 N.J. 311, 336-37 (2011)

> The prior-inconsistent-statement exception to the hearsay rule allows the jury to determine whether to believe the testimony given on the stand or the diametrically different version given earlier to the police. To satisfy constitutional confrontation guarantees, however, "[t]he jury . . . must observe the witness and make a decision about which account is true." Likewise, the admission of a witness's prior statement describing events, when the witness feigns a loss of memory on the stand, does not violate a defendant's federal or state right of confrontation. Although "a witness's feigned lack of recollection may sharply limit or nullify the value of cross-examination," we have "conclude[d] that those limitations do not

A-2573-14T3

rise to the level of [violating] a defendant's federal and state constitutional right to confront witnesses."

[Ibid. (quoting State v. Brown, 138 N.J. 481, 543 (1994), overruled on other grounds, State v. Cooper, 151 N.J. 326, 361-63 (1997))].

In this matter, we reject the claim these facts demonstrate Ruiz uttered inconsistent statements for which a charge should issue. There was no evidence Ruiz's trial testimony differed from what he told police. Officer Martina confirmed Ruiz stated the assailant's face was covered by a mask. Although defendant correctly suggests, if Ruiz told police he saw a mask, the fact should have been included in the police report; the lapse resulted from Officer Martina's failure to record this detail in his report, which cannot be attributed to Ruiz.

Moreover, the jury was presented with this evidence and could assess the credibility of Ruiz and Officer Martina. No facts support the jury ignored this evidence. Rather, deliberations show the jury carefully considered all evidence presented. Based on the verdict convicting defendant of armed robbery, we can only conclude the jury favorably adjudged Ruiz and Officer Martina's credibility. See State v. Provet, 133 N.J. Super. 432, 438 (App. Div.) ("If the credibility of the witness was impeached it would have served the purpose of disproving [the] assertion."), certif. denied 68 N.J. 174 (1975). We find no error.

Next, defendant argues the verdicts were inconsistent. He maintains the acquittal of the weapons charges means he could not be convicted of armed robbery. We are not persuaded.

The United States and the New Jersey Supreme Courts have held repeatedly inconsistency in the jury's verdict on multiple counts is not a ground to set aside a guilty verdict. See, e.g., United States v. Powell, 469 U.S. 57, 58-59, 105 S. Ct. 471, 477, 83 L. Ed. 2d 461, 464 (1984); Dunn v. United States, 284 U.S. 390, 393, 52 S. Ct. 189, 190, 76 L. Ed. 356, 359 (1932); State v. Banko, 182 N.J. 44, 55 (2004); State v. Grey, 147 N.J. 4, 11 (1996). In Powell, supra, 469 U.S. at 65, 105 S. Ct. at 476, 83 L. Ed. 2d at 468, the United States Supreme Court said:

> [E]ven verdicts that acquit on a predicate offense while convicting on the compound offense — should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.

In Banko, supra, 182 N.J. at 54, our Court quoted Powell with approval and held that "the Dunn/Powell rule controls inconsistent verdicts in this State." Further, the Court stated inconsistent "verdicts are permitted . . . 'so long as the evidence was sufficient to establish guilt on the substantive offense beyond a

10

reasonable doubt.'" Id. at 55 (quoting State v. Petties, 139 N.J. 310, 319 (1995)). In the event the verdicts appear inconsistent, this court "should not speculate as to whether the verdicts resulted from jury lenity, compromise, or mistake not adversely affecting the defendant." Grey, supra, 147 N.J. at 11. "We permit inconsistent verdicts . . . because it is beyond our power to prevent them." Banko, supra, 182 N.J. at 54.

Here, we conclude the jury instructions were clear and correct. See Grey, supra, 147 N.J. at 14-16 (reversing an inconsistent verdict when "the jury undoubtedly relied on the wrong predicate felony"). Further, each charge stands independently and the State's evidence supported each element of the first-degree robbery offense. Not only was the identification evidence strong, but Ruiz's testimony included several statements that defendant held a knife, he feared for his safety and defendant forcibly took $300.

Further, the inconsistency, which benefited defendant, does not require a reversal of the robbery conviction. See State v. Burnett, 245 N.J. Super. 99, 113 (App. Div. 1990), certif. denied, 126 N.J. 340 (1991). The law is clear, we will not speculate why the jury acquitted on the weapons offenses. Banko, supra, 182 N.J. at 54-55. We reject as unavailing the suggestion the verdict sheet was confusing. The jury instructions clearly stated the

deadly weapon in question was a knife. Defendant's speculation of juror confusion lacks merit. R. 2:11-3(e)(2).

Finally, defendant challenges the imposed sentence. As guided by our Supreme Court, we apply a deferential standard when reviewing sentencing determinations and should not substitute our judgment for the judgment of the sentencing court. See State v. Fuentes, 217 N.J. 57, 70 (2014). We must affirm the sentence unless "(1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) 'the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.'" Ibid. (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). Guided by this standard, we have no basis to intervene. See State v. O'Donnell, 117 N.J. 210, 215—16 (1989).

Here, the trial court found aggravating factors three (risk of recidivism), six (criminal history), and nine (specific and general deterrence). See N.J.S.A. 2C:44-1(a)(3), (6), (9). Defendant does not assert the factors do not apply; rather, he only argues the judge recited insufficient reasons for their application. The transcript refutes this contention.

Judge Donohue recited defendant's "long and significant" criminal history, beginning with juvenile arrests in 2004 and

12

numerous adjudications in between 2004 and 2006. In addition to this conviction, as an adult, defendant had two indictable convictions for theft and others for receiving stolen property, unlawful possession of a handgun, and drug possession. Also recorded are various municipal and disorderly persons convictions, violations of probation, and open charges for murder. At sentencing, the judge recited the timeframes for crimes, noting periods when defendant committed a new offense within weeks of a prior conviction. Also, he acknowledged past convictions, which resulted in county jail and probation sentences, did not deter his continued criminal conduct.

Defendant's lengthy and substantial criminal history amply supports a finding he is likely to commit a further offense. "[R]ecidivism . . . is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." Almendarez-Torres v. United States, 523 U.S. 224, 243, 118 S. Ct. 1219, 1230, 140 L. Ed. 2d 350, 368 (1998). His extensive juvenile record also was properly considered to support application of aggravating factor three. See State v. Torres, 313 N.J. Super. 129, 162 (App. Div. 1998) (stating, for the purposes of balancing aggravating and mitigating factors, "[a] sentencing court may consider a juvenile record").

Finally, the judge identified the need to deter defendant from the type of crime he committed. "[T]he seriousness of a criminal record, the predictive assessment of chances of recidivism, and the need to deter the defendant and others from criminal activity, do all relate to recidivism" and "go beyond the simple finding of a criminal history." State v. Thomas, 188 N.J. 137, 153 (2006). Defendant's history portrays an escalation of violence and increased seriousness of committed crimes. The need to deter violent offenses, like the one for which defendant was convicted, is appropriate. See State v. Cancel, 256 N.J. Super. 430, 437 (App. Div. 1992) ("[T]he weight attributable to the deterrence factor, cited by the judge, is obvious.").

Finding the aggravating factors outweighed the mitigating factors, the judge imposed an eighteen-year term of imprisonment. "[W]hen the aggravating factors preponderate, sentences will tend toward the higher end of the range" subject to the trial judge's discretion. State v. Natale, 184 N.J. 458, 488 (2005). The length of the sentence fell within the range designated for the offense, and it does not shock our judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2573-14T3