NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4900-14T4

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

AMIR LEGRANDE, a/k/a
YUNG SNOW,

 Defendant-Appellant.
_____________________________

 Argued April 5, 2017 – Decided August 7, 2017

 Before Judges Fuentes, Simonelli and Gooden
 Brown.

 On appeal from the Superior Court of New
 Jersey, Law Division, Hudson County,
 Indictment No. 13-10-1875.

 Margaret McLane, Assistant Deputy Public
 Defender, argued the cause for appellant
 (Joseph E. Krakora, Public Defender, attorney;
 Ms. McLane, of counsel and on the briefs).

 Eric P. Knowles, Assistant Prosecutor, argued
 the cause for respondent (Esther Suarez,
 Hudson County Prosecutor, attorney; Mr.
 Knowles, on the brief).

PER CURIAM
 A Hudson County grand jury returned Indictment No. 13-10-

1875, charging defendant Amir Legrande with second degree unlawful

possession of a handgun, N.J.S.A. 2C:39-5b; second degree

possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-

4a; second degree conspiracy to commit aggravated assault,

N.J.S.A. 2C:5-2 and N.J.S.A. 2C:12-1b(1); second degree aggravated

assault, N.J.S.A. 2C:12-1b(1); and second degree possession of a

firearm following a conviction for one of the offenses listed in

N.J.S.A. 2C:39-7b.

 Defendant was tried before a jury and convicted of second

degree conspiracy to commit aggravated assault. The jury acquitted

defendant of the remaining charges.1 The trial judge sentenced

defendant to a term of eight years, with an eighty-five percent

period of parole ineligibility and three years of parole

supervision, as mandated by the No Early Release Act, N.J.S.A.

2C:43-7.2.

 On appeal, defendant argues the trial court erred by failing

to instruct the jury on the lesser included offenses associated

1
 In Indictment No. 13-10-1874, defendant was charged with third
degree possession of methylone, contrary to N.J.S.A. 2C:35-10a(1).
In Indictment No. 13-01-0003, defendant was charged with three
counts of fourth degree unlicensed entry into a structure, contrary
to N.J.S.A. 2C:18-3a. Pursuant to a negotiated agreement with the
State, defendant disposed of these two indictments by pleading
guilty to third degree possession of methylone and one count of
fourth degree unlicensed entry.

 2 A-4900-14T4
with second degree conspiracy to commit aggravated assault. With

respect to the portion of the indictment charging him with second

degree aggravated assault, defendant asserts the trial judge

properly instructed the jury on the lesser included offense of

third degree aggravated assault, as well as the disorderly persons

offense of simple assault. Defendant argues the trial judge should

have taken the same approach with respect to the portion of the

indictment charging him with second degree conspiracy.

Specifically, defendant argues the trial judge should have

instructed the jury to consider the lesser included offenses of

conspiracy to commit third degree aggravated assault and

conspiracy to commit fourth degree aggravated assault.

 In a letter-brief submitted in lieu of a formal brief pursuant

to Rule 2:6-2(b), the State argues defense counsel's failure to

request an instruction on lesser included offenses for the

conspiracy count shows the inapplicability of this doctrine to the

facts of this case. Alternatively, the State argues defendant has

not shown that the trial judge committed plain error under Rule

2:10-2. Finally, the State argues there was no rational basis for

the trial court to instruct the jury on fourth degree conspiracy

to point a deadly weapon under N.J.S.A. 2C:12-1b(4) because the

victim was shot in the back as he drove away in his car. In

support of this argument, the State notes that codefendant Michael

 3 A-4900-14T4
A. Pasuco's testimony did not mention anything about using the

handgun to merely scare the victim.

 After reviewing the evidence presented at trial, we are

convinced there was a rational basis to instruct the jury on the

lesser included offenses of conspiracy to commit third degree

aggravated assault, N.J.S.A. 2C:12-1b(2); and conspiracy to commit

fourth degree aggravated assault, N.J.S.A. 2C:12-1b(4). If

properly instructed, the jury could have considered the overt acts

described in the indictment as well as the evidence presented at

trial to find defendant guilty of one of these two lesser included

offenses.

 The State has adopted the statement of material facts

described in defendant's appellate brief. See R. 2:6-2(a)(5).

We will thus consider the following facts uncontested for the

purpose of this appeal.

 Pasuco and defendant were indicted as codefendants in this

case. Pasuco pled guilty to second degree unlawful possession of

a firearm, N.J.S.A. 2C:39-5b. As part of his plea agreement with

the State, Pasuco agreed to testify against defendant in this

trial. S.G.2 also testified as a witness for the State.

2
 We use initials to protect the privacy of the fact witnesses who
testified in this trial.

 4 A-4900-14T4
 On May 25, 2013, approximately thirty to forty people boarded

a private "party bus" in Jersey City to travel to Seaside Heights

to celebrate S.G.'s twenty-first birthday. Defendant and a man

we identify as J.R. were among the revelers. S.G. testified that

defendant was seated in the "VIP section" in the rear part of the

bus. J.R. was seated in the front of the bus with his girlfriend.

J.R. testified that his recollection of the night was somewhat

unclear because it "was like a year ago[]" and he was "drunk that

night."

 At some point during the trip, J.R. claimed he was involved

in an altercation. In response to the prosecutor's questioning,

J.R. reiterated that his memory of what occurred was hazy: "I

don't know if I was[] personally[] fighting. I thought it was

like a brawl[.]" J.R. could not recall how many people were

involved in the "brawl" because the lights were off. By contrast,

S.G. testified that no fight occurred on the bus. The trip to

Seaside Heights took approximately two hours. According to S.G.,

defendant remained in the VIP section the entire time.

 The bus arrived back in Jersey City between 3 a.m. and 4 a.m.

on May 26, 2013. J.R. testified that he was one of the first

people to exit the bus. When asked if his girlfriend was with him

when he stepped off the bus, he responded: "No, I was going home

-- matter of fact, I had to go to work, or something like that.

 5 A-4900-14T4
No, she wasn't with me." As he walked to his car, J.R. testified

that he heard gunshots. He gave the following account of what

transpired next:

 Q. Were the shots near you?

 A. I don't know. I just heard shots.

 Q. Okay. So then you got into your car and you
 sped away backwards?

 A. Yeah.

 Q. And you hit a tree or a sidewalk. Correct?

 A. Yeah, I -- I guess I hit a tree. I hit
 something.

 Q. Okay. Do you remember what you hit?

 A. No, see, after that I don't remember
 nothing [sic].

 . . . .

 Q. Did you think the shots were meant for you?

 A. I wasn't thinking if they [were] meant for
 me. I just heard shots so I'm trying to get
 low.

 There were bullet holes in J.R.'s car after the shooting. A

bullet also "grazed" J.R. in his lower back. The trial judge

described the location of J.R.'s injury as "[r]ight above [his]

waist[.]" J.R. was not injured in any other way. The State did

not produce any medical evidence to describe the severity of the

injury. J.R. did not see who was shooting. When asked if defendant

 6 A-4900-14T4
was involved in the shooting, J.R. responded: "No, I never seen

[sic] him before." The record shows J.R. was an uncooperative

witness who made clear that he did not want to pursue this case.

 Q. Now you indicated on direct [examination]
 . . . [that] you've been visited by detectives
 a couple of times. Right?

 A. Yeah.

 Q. And were you ever asked if you could
 identify the person who --

 A. No.

 Q. -- fired the gun? The police never asked
 you to?

 A. Nope.

 Q. Did you ever tell them that you could?

 A. No, I didn't. I told them over, and over,
 I don't remember. And I told them to leave
 me alone. Like they keep coming to my house.
 I don't wanna [sic] be bothered. I don't even
 really wanna [sic] be -- I want -- I can't --
 I gotta [sic] leave. I got things to do.

 Pasuco was not on the party bus. He testified that defendant

borrowed his 2010 Dodge Charger at approximately 8 p.m. on May 25,

2013. About three hours later, Pasuco received a call from

defendant asking him how quickly he could get to Seaside Heights

because "he had [gotten] into a fight on the party bus and . . .

he didn't wanna [sic] take it back." When Pasuco told defendant

 7 A-4900-14T4
he could not make the trip to Seaside Heights, Pasuco claimed

defendant decided to take the bus back to Jersey City.

 Approximately thirty minutes later, defendant called Pasuco

again. This time, Pasuco testified defendant told him "to go and

get his gun[.]" Defendant told Pasuco he had parked the Dodge

Charger in the parking lot of Our Lady of Mercy Academy before

boarding the bus to Seaside Heights, and he had placed his handgun

underneath the tire of a grey vehicle parked nearby. Pasuco drove

to the parking lot in his sister's car and retrieved the handgun.

Pasuco then received a text message from defendant advising him

that the bus was fifteen minutes away. Defendant told Pasuco that

he wanted the handgun as soon as he arrived.

 Pasuco drove the Charger to where the bus was scheduled to

arrive and waited. He soon saw the bus pull up. According to

Pasuco, defendant was "almost the last [person to get] off the

bus." Pasuco walked to meet defendant and said: "[W]hat's going

on?" Defendant responded: "Oh nothing. You know, the kid . . .

must have went home." Despite defendant's previous instructions,

Pasuco did not hand the gun over to defendant. Pasuco testified

he was waiting for defendant to say: "Oh, give it to me[.]" Pasuco

gave the following account of what occurred next: "As we're

walking[,] . . . a greenish car . . . starts flying down Lembeck

[Avenue] and pulls into the . . . driveway . . . like towards the

 8 A-4900-14T4
left of where the cars are parked[.] . . . [H]e[] . . . speeds

in and . . . he gets out . . . of his car and he starts to argue

with . . . us."

 Pasuco claimed the unidentified driver screamed and cursed

at them. In the midst of this verbal dispute, Pasuco testified

defendant told him "to give him the gun[.]" Pasuco claimed he was

"frozen up[.]" Eventually, as Pasuco reached into his pocket,

defendant "grab[bed]" the gun. At this point, someone threw a

bottle at the unidentified driver's car, and the driver sped away.

Pasuco testified that he heard a single gunshot followed by the

sound of broken glass. He did not see defendant fire the gun

because he was running away from the scene.

 Pasuco drove his sister's car back to his home after the

shooting took place. Defendant arrived with the Dodge Charger

approximately five minutes later. Pasuco then drove defendant and

two other friends home. Pasuco testified that during the ride,

defendant said: "Oh, when I drink, man, I don't know . . . what

the fuck I'm doing[.] . . . I didn't wanna [sic] do that." Pasuco

also testified that he overheard the two friends saying they had

"stashed" the handgun.

 Against this record, defendant raises the following arguments

on appeal:

 9 A-4900-14T4
 POINT I

 THE COURT'S [FAILURE] TO CHARGE THE JURY ON
 ANY LESSER-INCLUDED OFFENSES WITH RESPECT TO
 THE CONSPIRACY CHARGE REQUIRES REVERSAL OF
 DEFENDANT'S CONVICTION. (Partially Raised
 Below).

 POINT II

 DEFENDANT'S EIGHT-YEAR SENTENCE WITH AN
 [EIGHTY-FIVE PERCENT] PAROLE DISQUALIFIER IS
 EXCESSIVE.

 N.J.S.A. 2C:1-8e cautions trial courts not to charge the jury

"with respect to an included offense unless there is a rational

basis for a verdict convicting the defendant of the included

offense." However, a trial judge has an independent, non-delegable

duty "'to instruct on lesser-included charges when the facts

adduced at trial clearly indicate that a jury could convict on the

lesser while acquitting on the greater offense.'" State v.

Funderburg, 225 N.J. 66, 76 (2016) (quoting State v. Jenkins, 178

N.J. 347, 361 (2004)). Thus, even if neither the State nor

defendant requests the trial judge to instruct the jury on a lesser

included offense, the court must sua sponte provide such an

instruction when appropriate. State v. Maloney, 216 N.J. 91, 107

(2013) (quoting State v. Thomas, 187 N.J. 119, 132 (2006)).

 An offense is "included" when:

 (1) It is established by proof of the same or
 less than all the facts required to establish
 the commission of the offense charged; or

 10 A-4900-14T4
 (2) It consists of an attempt or conspiracy
 to commit the offense charged or to commit an
 offense otherwise included therein; or

 (3) It differs from the offense charged only
 in the respect that a less serious injury or
 risk of injury to the same person, property
 or public interest or a lesser kind of
 culpability suffices to establish its
 commission.

 [N.J.S.A. 2C:1-8d (emphasis added).]

 During the Rule 1:8-7(b) charge conference, the trial judge

considered instructing the jury on lesser included offenses with

respect to defendant's alleged conspiracy to commit second degree

aggravated assault. The judge ultimately decided against giving

this instruction based on the indictment's description of

defendant's overt acts, which provided:

 Michael Pasuco retrieved a [r]evolver and
 brought it to the parking lot of Our Lady of
 Mercy Church, at the direction of Amir
 Legrande. Amir Legrande then took the gun and
 used it to discharge four bullets in the
 direction of [J.R.].

 The judge concluded:

 [T]he jury would have to be instructed that
 the aggravated assault that makes up the
 conspiracy is only that . . . contained in the
 [i]ndictment, not any of the lesser included
 [offenses] that I'm charging. It has to be
 an attempt to . . . purposely or knowingly
 cause serious bodily injury, and that's it.

 11 A-4900-14T4
As this passage shows, the trial judge mistakenly believed the

lesser included offense analysis required under N.J.S.A. 2C:1-8(d)

was bound by the four corners of the overt acts described in the

indictment.

 The evidence presented at trial clearly provided a rational

basis to instruct the jury on the lesser included offenses of

conspiracy to commit third degree aggravated assault, N.J.S.A.

2C:12-1b(2); and conspiracy to commit fourth degree aggravated

assault, N.J.S.A. 2C:12-1b(4). The jury could have found from

Pasuco's testimony that defendant only wanted to have the gun

available to him when he returned to Jersey City. Stated

differently, the original conspiracy did not exclusively involve

actually shooting anyone.

 Because defendant did not request these charges, we review

the trial judge's decision for plain error. R. 2:10-2. As applied

to jury instructions, plain error requires us to determine whether

the charge's impropriety "prejudicially affect[ed]" defendant's

"substantial rights" and was "sufficiently grievous" to convince

us that the error had a "clear capacity to bring about an unjust

result." State v. Chapland, 187 N.J. 275, 289 (2006) (citation

omitted). We are satisfied the trial judge's error had the clear

capacity to produce an unjust result.

 12 A-4900-14T4
 Aside from second degree conspiracy, the jury acquitted

defendant of all charges in the indictment, including unlawful

possession of a handgun and possession of a handgun for an unlawful

purpose. The only evidence of conspiracy came from Pasuco's

testimony. Pasuco testified that defendant told him "to go and

get his gun." There is no other evidence revealing the

conspiracy's underlying purpose. The failure to provide the jury

with the options we have discussed sealed defendant's fate. Under

these circumstances, the record "clearly indicated" the jury

should have been charged with the lesser included offenses

applicable to second degree conspiracy, see State v. Rivera, 205

N.J. 472, 475 (2011), and the trial judge's error constituted a

manifest injustice.

 We are compelled to reverse defendant's conviction and remand

this matter for a new trial. In this light, we will not address

defendant's argument attacking the reasonableness of his sentence.

 Reversed and remanded. We do not retain jurisdiction.

 13 A-4900-14T4