**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3718-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DYRELLE VENABLE,

     Defendant-Appellant.

_____

Submitted December 12, 2019 – Decided October 6, 2020

Before Judges Alvarez and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 16-07-0973.

Joseph E. Krakora, Public Defender, attorney for appellant (Seon Jeong Lee, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Stephanie Davis Elson, Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Defendant Dyrelle Venable appeals from a January 22, 2018 judgment of conviction of first-degree robbery and related charges, as well as the sentence imposed for those convictions. We affirm.

I.

We summarize the facts adduced at trial. On the night of December 9, 2015, the victim and his friend walked to a Jersey City convenience store. They passed a group of men on the sidewalk with whom they had a brief verbal exchange. One remarked that the victim had a new cellphone.

A short time after leaving the store, the victim and his friend were surrounded by several assailants. One pointed a gun at the pair, demanding they turn over their property. A second held a gun to the back of the victim's head. The victim gave the gunman in front of him his cellphone. He was then struck in the face with a gun and fell to the ground. The assailants fled.

On a call to 911, the victim told the dispatcher he had been robbed by seven men. He told responding officers he had been robbed by three men wearing sweatpants and grey hoodies with the hoods up.[1] He reported that the

---

[1] At trial, the victim testified he was robbed by four men. The discrepancy in the victim's accounts of the number of robbers was highlighted by defendant at trial and is a basis for his arguments that the victim's testimony was unreliable and the verdict is against the weight of the evidence.

man who took his phone was wearing a black jacket with a stripe over his hoodie. The victim stated he was robbed by the men he and his friend had encountered on the sidewalk earlier that evening.

The next morning, the victim saw three of the assailants in a parking lot. He recognized the suspect who had taken his phone, saw his face, and noticed he was wearing the grey hoodie and black jacket he wore during the robbery. The victim did not say anything to the men and did not call police.

Five days later, the victim went to the police station to attempt to identify the suspects. There were two detectives present: Brian Glasser, who was investigating the robbery, and Jorge Santana, who had no involvement in the investigation. Most of the victim's interactions with the two were captured on video.

The video recording depicts Santana showing the victim two arrays of six photographs each. Defendant's photograph was in one of the arrays. A photograph of a co-defendant was in the other. The victim did not identify anyone, explaining he could not identify the suspect who took his phone because his face was obscured during the robbery.

Glasser thereafter entered the room and asked the victim to view video surveillance recordings from the convenience store and nearby locations on the

3

night of the robbery. The victim left the room with Glasser and their interaction was not captured by the video recording. However, the system captured a faint recording of some of their conversation. In addition, Glasser contemporaneously documented their off-camera interaction.

While with Glasser, the victim confirmed that one of the video recordings he was shown depicted the men he and his friend encountered shortly before the robbery. One of the men wore a black jacket with a stripe over a hoodie. The faces of the men were obscured. The victim also confirmed that another video recording captured him interacting with the group. The victim identified himself and his friend in another recording walking away from the store while being followed by three men.

The victim returned to the room in which he had been shown the photo arrays. Glasser again asked him to step out of the room. The second interaction also was not recorded. The detective showed the victim still photographs from the surveillance videos with the faces of the suspects blurred. The victim ultimately told Glasser he could identify the suspect who stole his phone at gunpoint, but had not done so because he feared retaliation from defendant, who he had seen in his neighborhood. He stated that the suspect's photograph was in one of the arrays he had been shown earlier and agreed to view the arrays again.

4

Prior to viewing the photo arrays for a second time, the victim was visibly upset and crying. He was joined by Santana. Their subsequent interaction was captured on video. The detective stated he was aware the victim had told Glasser he could identify his assailant and was willing to view the photo arrays again. Santana showed the victim the same two photo arrays he had previously been shown. The victim identified defendant as the suspect who robbed him at gunpoint and stated that although he did not see defendant's face during the robbery, he saw his face the day after when he encountered him in a parking lot. He did not identify a suspect in the second photo array, which included a photograph of a co-defendant who appeared in the surveillance video recordings and still photographs shown to the victim.[2]

Officers arrested defendant after a search of his bedroom uncovered evidence linking him to the robbery, including a loaded handgun. A grand jury indicted defendant, charging him with first-degree robbery, N.J.S.A. 2C:15-1; second-degree unlawful possession of a weapon on December 9, 2015, the day of the robbery, N.J.S.A. 2C:39-5(b); second-degree possession of a weapon for an unlawful purpose on December 9, 2015, N.J.S.A. 2C:39-4(a); first-degree

---

[2] Santana showed the victim a third photo array which included a photograph of a suspect developed by Glasser after his conversations with the victim. The victim did not identify a suspect in the third photo array.

conspiracy to commit robbery, N.J.S.A. 2C:5-2; and second-degree unlawful possession of a weapon on December 14, 2015, the day of the search, N.J.S.A. 2C:39-5(b).[3]

Before trial, defendant moved pursuant to United States v. Wade, 388 U.S. 218 (1967), to suppress the victim's out-of-court identification. He argued it was inherently suggestive for Glasser, after the victim did not pick anyone from the two photo arrays, to show him the video recording and still photos from the night of the robbery and suggest his assailants were depicted in that evidence.

In addition, defendant argued the two detectives introduced the idea of the victim being in fear of him as the reason he was not identified in the first viewing of the arrays. The State opposed the motion. The trial court issued a detailed written decision denying the motion without holding an evidentiary hearing. The court's decision is discussed in further detail below.

The jury convicted defendant of first-degree robbery, first-degree conspiracy to commit robbery, and second-degree unlawful possession of a weapon on December 14, 2015, the day of the search. The jury acquitted defendant of second-degree unlawful possession of a weapon and second-degree

---

[3] Additional counts of the indictment are not before us.

possession of a weapon for an unlawful purpose on December 9, 2015, the day of the robbery.

At sentencing, the court found aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (risk that defendant will commit another offense), six, N.J.S.A. 2C:44-1(a)(6) (extent of defendant's prior criminal record and the seriousness of the offenses of which he has been convicted), and nine, N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others). The court found no mitigating factors and that the aggravating factors substantially outweighed the nonexistent mitigating factors.

For first-degree robbery, the court sentenced defendant to a twelve-year term of incarceration with an eighty-five-percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, as well as concurrent terms of five years' imprisonment, with an eighty-five-percent period of parole ineligibility for first-degree conspiracy to commit robbery, and five years' imprisonment with a forty-two-month period of parole ineligibility for second-degree unlawful possession of a weapon.

This appeal follows. Defendant makes the following arguments.

> POINT I
>
> THE COURT ERRED IN DENYING THE MOTION FOR A <u>WADE</u> HEARING BECAUSE DEFENDANT

DEMONSTRATED SOME EVIDENCE OF IMPERMISSIBLY SUGGESTIVE METHODS EMPLOYED BY THE POLICE TO OBTAIN THE VICTIM'S OUT-OF-COURT IDENTIFICATION OF DEFENDANT IN A PHOTO ARRAY AND THIS CREATED A VERY SUBSTANTIAL LIKELIHOOD OF IRREPARABLE MISIDENTIFICATION.

A. THE COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A WADE HEARING.

B. THE COURT ERRED IN ADMITTING AS RELIABLE THE VICTIM'S OUT-OF-COURT IDENTIFICATION OF DEFENDANT IN THE PHOTO ARRAY, A PRODUCT OF TAINTED SYSTEM VARIABLES AND MANY ESTIMATOR VARIABLES THAT BRING INTO DOUBT THE VICTIM'S PERCEPTION AND MEMORY.

POINT II

[THE VICTIM], WHO IDENTIFIED DEFENDANT AS A ROBBER, PROVIDED INCONSISTENT AND INCREDIBLE TESTIMONY ABOUT HAVING SEEN DEFENDANT'S FACE DURING THE ROBBERY AND, THEREFORE, THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.

POINT III

THE JURY CHARGE ON FIRST-DEGREE ARMED ROBBERY WAS NOT SUFFICIENTLY TAILORED IN THAT IT DID NOT EXPLICITLY INSTRUCT THE JURY THAT IT MUST FIND DEFENDANT NOT GUILTY IF IT FOUND THAT HE WAS NOT ARMED, WHICH HAD THE CLEAR CAPACITY TO PRODUCE AN UNJUST OUTCOME AND RESULTED IN INCONSISTENT VERDICTS.

POINT IV

DEFENDANT'S 12-YEAR SENTENCE WITH 85% NERA PAROLE INELIGIBILITY IS UNDULY EXCESSIVE IN LIGHT OF THE PERTINENT MITIGATING CONSIDERATIONS THAT THE COURT FAILED TO WEIGH AT SENTENCING.

II.

In State v. Henderson, 208 N.J. 208 (2011), the Supreme Court established a four-part test for conducting a Wade hearing to determine the admissibility of an out-of-court identification. "First, to obtain a pretrial hearing, a defendant has the initial burden of showing some evidence of suggestiveness that could lead to a mistaken identification." Id. at 288. "That evidence, in general, must be tied to a system – and not an estimator – variable." Id. at 288-89.

Second, if the court finds a defendant has met the hearing threshold, "[t]he State must then offer proof to show that the proffered eyewitness identification is reliable[,] accounting for system and estimator variables. . . ." Id. at 289. "[T]he court can end the hearing at any time if it finds from the testimony that defendant's threshold allegation of suggestiveness is groundless." Ibid.

Third, the defendant bears the ultimate burden "to prove a very substantial likelihood of irreparable misidentification." Ibid. "Fourth, if after weighing the evidence presented a court finds from the totality of the circumstances that

9

defendant has demonstrated a very substantial likelihood of irreparable misidentification, the court should suppress the identification evidence." Ibid.

The Henderson Court provided a non-exhaustive list of nine system variables affecting the reliability of an identification that are created or controlled by law enforcement. Id. at 289-90. Those variables include several relevant here: (1) "[d]id the witness receive any information or feedback, about the suspect or the crime, before, during, or after the identification procedure?"; (2) "[d]id the witness view the suspect more than once as part of multiple identification procedures?"; (3) "[d]id police use the same fillers [non-suspect photographs] more than once?"; and (4) "[d]id the eyewitness initially make no choice" from the photo array? Id. at 290. The Court also listed thirteen estimator variables, outside the control of law enforcement, that could influence the reliability of the identification and which should be considered at the hearing once defendant has made a showing of some evidence of suggestiveness that could lead to a mistaken identification. Id. at 291-92.

The parties have divergent views of how the trial court resolved defendant's motion. Defendant argues that despite finding he made a showing of some evidence of suggestiveness that could lead to a mistaken identification, the trial court did not hold a hearing on his motion. Instead, he argues, the court

10

reviewed the video and audio recordings of the victim's interactions with the detectives, police reports, system variables, and estimator variables and determined based on the totality of the circumstances that the victim's out-of-court identification was reliable. In doing so, defendant argues, the trial court blurred the four-part <u>Henderson</u> analysis and made a reliability determination without giving him the opportunity to create a record through the examination of the victim and detectives, particularly with respect to what transpired outside of the view of the video recording when the victim met with Glasser.

The State, on the other hand, argues the trial court reviewed defendant's proffer and concluded he failed to make a showing of some evidence of suggestiveness that could lead to a mistaken identification. Thus, the State contends, the trial court correctly denied defendant's request for a hearing on the reliability of the out-of-court identification.

We have carefully reviewed the trial court's written opinion. Despite a number of references to the totality of the circumstances standard, and to estimator variables, both of which are applicable only after a defendant's initial showing of suggestiveness has been made, we conclude that the core of the trial court's decision is its conclusion that defendant failed to make the necessary showing to warrant a hearing.

11

After describing in detail the video and audio recordings of the victim's interactions with the detectives, the court concludes "[b]ased on the totality of the circumstances, the evidence in the record does not provide some evidence that the identification was not actually that of the victim or was imposed upon him so that a substantial likelihood of irreparable misidentification can be said to exist."  Da53.  This holding incorporates two conflicting standards: "totality of the circumstances" and "some evidence."

The trial court's explanation of the evidence on which it relied to reach its conclusion is enlightening:

> As [v]ictim himself confirms, he could not see the faces of the actors in the surveillance video and the faces in the stills were blurred.  Further, it is clear from a review of the video that Detective Glasser did not plant the idea of fear of retaliation or fear for his life in [v]ictim's mind.  When he is asked if he is trying to say he is scared, [v]ictim responds that he would rather leave the United States than see the men again because he is afraid they will kill him.  Victim is adamant throughout the interview that he is afraid and that is why he does not want to proceed.  It is only after the Detective asks him, if he was not concerned about retaliation, could he have identified someone in the array that [v]ictim admits he could have made an identification and did not.  Upon a second viewing of the array, he picks out [d]efendant's photo upon seeing it.  He[,] however, does not identify anyone in the second and third photo array[s], both of which contained photos of the co-defendant and [an]other suspect.  At this time, the [c]ourt finds that the photo array procedure does not

12

<span>A-3718-17T4</span>

rise to the level of suggestiveness warranting suppression.

Having acknowledged that he was not challenging the photo arrays or the manner in which they were administered, defendant relied on the victim's interaction with Glasser during which he viewed the video recordings and still photographs from the night of the robbery to make his initial showing of suggestiveness. The trial court evaluated precisely that evidence and determined it did not establish suggestiveness warranting a hearing.

There is sufficient support in the record for the trial court's determination. The video recording establishes the victim selected defendant from the photo array without prompting from the detectives. In addition, it is the victim who volunteers that, although he recognized defendant during his first viewing of the photo array, he did not identify him out of fear. The victim's emotional distress and crying can be seen on the recording. His review of the surveillance recordings and still photographs, although off camera, can be heard and was memorialized in a written report. The victim confirmed on video that he, and not the detectives, identified his assailant in the recordings from the night of the robbery. The victim noted that he could not see defendant's face in the recording and still photographs, but could identify him from the clothing he wore. The victim also did not identify the co-defendant or other suspect, both of whom

appeared in the recordings, in the second and third photo arrays, corroborating the court's conclusion the victim was not subject to suggestion by the detectives.

The trial court's written discussion of estimator variables was superfluous to its analysis. We do not view that portion of the trial court's opinion to undermine the validity of its determination that defendant failed to satisfy the first prong of the <u>Henderson</u> test and was not, therefore, entitled to a hearing or suppression of the out-of-court identification. The estimator variables discussed in the trial court's opinion, including the victim's opportunity to see defendant during the robbery, the level of stress involved, and the short duration of the event, were available subjects of cross-examination at trial, as were the victim's prior inconsistent statements about whether and when he saw defendant's face.[4]

## III.

N.J.S.A. 2C:15-1 sets forth the elements of robbery. The statute provides:

> a.   Robbery defined. A person is guilty of robbery if, in the course of committing a theft, he:
>
> (1)   Inflicts bodily injury or uses force upon another; or
>
> (2)   Threatens another with or purposely puts him in fear of immediate bodily injury; or

---

[4] At trial, for the first time, the victim testified he saw defendant's face during the robbery.

> (3) Commits or threatens immediately to commit any crime of the first or second degree.

> . . . . .

> b. Grading. Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon.

> [N.J.S.A. 2C:15-1.]

As noted above, defendant was charged with first-degree armed robbery. Second-degree robbery was not included as a lesser-offense. The court, without objection from defendant, issued jury instructions that were nearly identical to the model jury instructions for first-degree robbery. Of note, the instructions included the following passage:

> A section of our statute provides that a robbery is a crime of the second degree, except that it is a crime of the first degree if the actor is armed with or uses or threatens the immediate use of a deadly weapon. In this case, the State must prove beyond a reasonable doubt that the defendant was armed with, used or threatened the immediate use of a deadly weapon while in the course of committing a robbery. Armed with a deadly weapon means that the defendant possessed and had immediate access to a deadly weapon.

The judge also defined "deadly weapon," "serious bodily injury," and "possession" – all required elements of first-degree robbery. At the conclusion

of the charge for first-degree robbery, the court, again quoting the model charge, instructed the jury as follows: "to summarize, if you find that the State has not proven beyond a reasonable doubt any one of the elements of the crime of robbery, as I have defined that crime to you, then you must find the defendant not guilty."

Defendant argues the jury charge on first-degree robbery was confusing and did not make sufficiently clear to the jury that it must find defendant not guilty of robbery if it found he was not armed. He argues the instructions resulted in inconsistent verdicts, given he was found guilty of first-degree robbery, but acquitted of the two weapons offenses relating to the robbery.

It is well-settled that "[a]ccurate and understandable jury instructions in criminal cases are essential to a defendant's right to a fair trial." State v. Concepcion, 111 N.J. 373, 379 (1988). However, "[i]f the defendant does not object to the charge at the time it is given, there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case." State v. Singleton, 211 N.J. 157, 182 (2012). Therefore, "the failure to object to a jury instruction requires review under the plain error standard." State v. Wakefield, 190 N.J. 397, 473 (2007).

> As applied to a jury instruction, plain error requires demonstration of "legal impropriety in the charge

A-3718-17T4

> prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result."
>
> [State v. Chapland, 187 N.J. 275, 289 (2006) (quoting State v. Hock, 54 N.J. 526, 538 (1969)).]

The mere possibility of an unjust result is not enough to warrant reversal of a conviction. State v. Jordan, 147 N.J. 409, 422 (1997). "The error must be considered in light of the entire charge and must be evaluated in light 'of the overall strength of the State's case.'" State v. Walker, 203 N.J. 73, 90 (2010) (quoting Chapland, 187 N.J. at 289).

"[W]e must read the charge as a whole." State v. Townsend, 186 N.J. 473, 499 (2006). "[T]he prejudicial effect of an omitted instruction must be evaluated in light of the totality of the circumstances including all the instructions to the jury, [and] the arguments of counsel." Ibid. (alteration in original) (quoting State v. Marshall, 123 N.J. 1, 145 (1991)). A defendant is entitled to a charge that is "accurate and that does not, on the whole, contain prejudicial error." State v. Labrutto, 114 N.J. 187, 204 (1989). "The test to be applied . . . is whether the charge as a whole is misleading, or sets forth accurately and fairly the controlling principles of law." State v. Baum, 224 N.J. 147, 159 (2016) (quoting State v. Jackmon, 305 N.J. Super. 274, 299 (App. Div. 1997)).

A-3718-17T4

We are satisfied that the court clearly explained to the jury the elements of first-degree robbery and the State's obligation to prove those elements beyond a reasonable doubt. In addition, the court adequately instructed the jury with respect to the State's obligation to prove that defendant was armed with, used or threatened to use a deadly weapon.

Nor do we agree with defendant that the inconsistent nature of the jury verdicts warrants reversal of his convictions. The Supreme Court has held "that a jury may render inconsistent verdicts so long as there exists a sufficient evidential basis in the record to support the charge on which the defendant is convicted." State v. Banko, 182 N.J. 44, 46 (2004).

There is sufficient support in the record on which a jury could find that defendant was armed with, used, or threatened the use of a deadly weapon while committing the robbery. The victim testified defendant pointed a gun at him and he said so in his 911 call immediately after the robbery. In addition, a search of defendant's bedroom produced a gun, which was the basis for his conviction of the weapon possession offense relating to December 14, 2015.

IV.

We review defendant's sentence for abuse of discretion. State v. Pierce, 188 N.J. 155, 166 (2006). We must affirm a sentence "unless (1) the sentencing

guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) 'the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.'" State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

The sentencing court must examine the aggravating and mitigating factors enumerated in N.J.S.A. 2C:44-1(a) and (b). Each factor found by the court must be relevant and supported by "competent, reasonably credible evidence." Id. at 72 (quoting Roth, 95 N.J. at 363). The court then must conduct a qualitative balancing of the factors to determine the appropriate sentence. Id. at 72-73. One "reasonable" approach is for the court to begin its analysis in the middle range for the offense at issue and determine whether the factors justify departure above or below the middle range. Id. at 73 (quoting State v. Natale, 184 N.J. 458, 488 (2005)).

Defendant does not challenge the three aggravating factors found by the trial court. He argues that the court erred by not considering his age at sentencing. Defendant was eighteen when he committed the robbery. The record establishes, however, that the State, in light of defendant's age, requested

a sentence of fifteen years, the middle of the first-degree range. The trial court imposed a shorter sentence of twelve years. We find defendant's remaining arguments concerning his sentence to be unconvincing and conclude the length of his sentence does not shock the judicial conscience.

To the extent we have not specifically addressed any of defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3718-17T4