949 A.2d 832

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
KENNETH NERO, DEFENDANT–RESPONDENT.

Argued March 10, 2008—Decided June 30, 2008.

398

*Steven E. Braun,* Chief Assistant Prosecutor, argued the cause for appellant (*James F. Avigliano,* Passaic County Prosecutor, attorney).

*Stephen W. Kirsch,* Assistant Deputy Public Defender, argued the cause for respondent (*Yvonne Smith Segars,* Public Defender, attorney).

*Joie D. Piderit,* Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Anne Milgram,* Attorney General, attorney).

Justice RIVERA–SOTO delivered the opinion of the Court.

The robbery statute provides in part that "[r]obbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor ... threatens the immediate use of a deadly weapon." *N.J.S.A.* 2C:15–1(b). The simulated use of a deadly weapon also "can provide a sufficient factual basis for conviction of first-degree robbery" when there is "[a]n unequivocal or unambiguous simulation of a weapon possessed, as well as an ambiguous or equivocal gesture coupled with threatening words that complete the impression of a concealed weapon[.]" *State v. Chapland,* 187 *N.J.* 275, 292, 901 *A.*2d 351 (2006).

■ According to the Appellate Division, the robbery statute does not explicitly set forth the *mens rea* or state of mind element required to convict on the charge of robbery by use of a simulated weapon. *State v. Nero,* 393 *N.J.Super.* 316, 324, 923 *A.*2d 300 (App.Div.2007). Applying the *Code of Criminal Justice's* "gap-filler" provision, *N.J.S.A.* 2C:2–2(c)(3), the panel concluded that

"[w]here a statute does not expressly designate a culpable mental state, but ... 'necessarily involves such culpable mental state,' the gap-filler provision of the Code imputes a mental state of knowingly." *Ibid.* (quoting *N.J.S.A.* 2C:2–2(c)(3)). It thus held that "the simulation element [of the first-degree robbery statute] requires a mens rea." *Ibid.*

■ This appeal requires that we address whether there is a *mens rea* or state of mind requirement for the simulated weapon portion of a first-degree robbery charge. We conclude that, because "[t]heft is a specific intent crime [and i]t follows that robbery, as an aggravated form of theft, is a specific intent crime as well[,]" *State v. Lopez,* 187 *N.J.* 91, 98, 900 *A.*2d 779 (2006) (citations omitted), and based on the language of the statute itself, a "purposeful" state of mind is required for first-degree robbery by use of a simulated weapon. Thus, inasmuch as the jury charge as a whole in this case fairly instructed the jury of that requirement, defendant's first-degree robbery conviction is reinstated.

I.

In the early morning hours of Sunday, March 9, 2003, Rakema Nelson and Travell Zimmerman entered a busy late-night food service/restaurant in Paterson after attending a party. Nelson carried a small purse around her arm, which was open while she waited in line, while Zimmerman stood behind her, engaged in conversation with another restaurant patron.

Defendant Kenneth Nero entered the restaurant alone and made an "off comment" to Zimmerman, who ignored him, and continued talking to the other patron. Defendant then approached Nelson and asked what was in her purse. When Nelson ignored that question, defendant put his hand on the purse's strap. Nelson asked defendant what he was doing and, placing his hand in the area of his waist, he replied, "do you know what I got right here? I'll take your shit." According to Nelson, she "just wasn't really thinking anything of it. [She] was just trying to ignore him, because [she] didn't really know what [defendant] was doing."

Nelson described that defendant "wouldn't let go of [her] purse[,]" and that they "were going back and forth[ and h]e was tugging and [she] was tugging" on the purse. She explained that "[b]ecause he was motioning to his waistband, asking [her] if [she] knew what he had[,]" she was in fear yet could not move away because she was trapped against the service counter.

At that point, Zimmerman intervened. She told defendant to leave and then put her own purse on the counter "to have two loose hands, free hands ... [b]ecause [she] didn't know his mindset." According to her testimony, defendant "was very hostile and [she] didn't know what was going to occur." As a result of that confrontation, defendant told Zimmerman that he would "take [her] stuff too." She explained that, although defendant did not attempt to take Zimmerman's purse, "he pushed [her]. [She] told him to go ahead once again and he pushed [her] again. That's when [she] hit him and he started—[they] started fighting."

The fight escalated, with Nelson joining in. Defendant twice punched Zimmerman in the eye. Ultimately, Nelson and Zimmerman fled the restaurant for the safety of their car, which was parked in the restaurant's parking lot; from the car, Nelson called the police. Defendant tried to follow them, but bumped into another restaurant patron in the doorway and a scuffle ensued after that patron told defendant to leave the women alone.

The police responded. After a preliminary investigation, the responding officer concluded that the incident was a simple assault and, hence, he was going to release defendant. Nelson then related how defendant had grabbed and had tried to take her purse, which would have elevated the nature of the offense above a simple assault. Based on that information, defendant was transported to police headquarters, where Nelson and Zimmerman signed complaints against him.

The Passaic County grand jury returned an indictment charging defendant with two counts of robbery. The first count charged defendant with the first-degree robbery of Nelson, contrary to *N.J.S.A.* 2C:15–1(a) and (b), while the second count charged the

second-degree robbery of Zimmerman, contrary to *N.J.S.A.* 2C:15–1(a)(1). At the close of the evidence at his jury trial, defendant moved for a judgment of acquittal on both counts. He argued for acquittal on the first-degree robbery charge claiming that either a weapon or the simulation of a deadly weapon using a tangible object is required to elevate robbery from a second- to a first-degree offense. He also argued that he was entitled to acquittal on the second-degree robbery count because, he claimed, there was no act by defendant to obtain Zimmerman's property. The trial court denied that motion as to both counts.

In respect of the overall first-degree robbery charge, the trial court instructed the jury as follows:

In count number one, the defendant Kenneth Nero is charged with the crime of robbery in the first degree. . . .

The pertinent part of [the robbery] statute, a statute is a law, that's pertinent for you, says this:

"A person is guilty of robbery [ ] in the first degree, if, in the course of committing a theft, he knowingly:

"Inflicts bodily injury or uses force upon another; or

"Threatens another with or purposely puts her in fear of immediate bodily injury and, in addition, he threatens the immediate use of a deadly weapon."

In order for you to find the defendant Kenneth Nero guilty of robbery in the first degree, the State is required to prove each of the following elements beyond a reasonable doubt:

(1) That the defendant was in the course of committing a theft;

(2) That, while in the course of committing the theft, the defendant knowingly inflicted bodily injury or used force upon another and/or threatened another with or purposely put her in fear of immediate bodily injury; and

(3) That the defendant threatened the immediate use of a deadly weapon.

So, let me go on to explain or define, for you, some of the things that were mentioned in those three elements.

. . . .

I[ will] define, for you, ["]purposely["] in just a minute, because it's—one of the things that's said there is the defendant purposely does anything that's a substantial step in a course of conduct designed to culminate in the commission of the offense.

. . . .

Every crime, as it's defined in the law, contains with[in] it, as an element, a certain mental state. ["]Purposely["] and ["]knowingly["] are mental states that you're gonna hear spoken about now in these instructions. We've—I've made

reference now to doing something with purpose, acting purposely by design. Those terms all have the same meaning. And, when we're talking about these mental states, the name essentially tells you what it means. Let me just tell you what . . . the law says acting ["]purposely["] means.

"A person acts purposely with respect to the nature of his conduct or a result thereof, if it is his conscious object to engage in conduct of that nature or to cause such a result. A person acts purposely with respect to attendant circumstances, if he is aware of the existence of such circumstances, or he believes or hopes that they exist."

So, it's his conscious object to bring about a particular result. "Purposely" then means you do something deliberately. You mean to do just that. And, if we could use the same word to define it, we would say someone did that on purpose. We often say that he meant to do it. Did it on purpose.

Remember purpose is a state of mind that cannot be seen and can only be determined by inference from conduct, words or acts. Therefore, it's not necessary that the State produce witnesses to testify that a defendant said he purposely did something. His purpose may be gathered from his acts and conduct[,] from all that he said and did at the particular time and place, and from all the surrounding circumstances reflected in the evidence. So then, this last language is referring you back to the two different kinds of evidence, direct and circumstantial, telling you that, because this element of a crime is a state of mind that can't be seen; if it's shown, you wouldn't ordinarily expect it to be shown by direct evidence, it would have to be established inferentially by circumstantial evidence.

Explaining that its charge up to that point had covered "the elements of second[-]degree robbery[,]" the trial court then tracked the Model Jury Charge for robbery in the first degree and instructed the jury as follows:

The count one charge is first[-]degree robbery. There is an additional element. And it's this. In this case, the State alleges further that the defendant did not actually possess a deadly weapon, but instead threatened the immediate use of such weapon, and engaged in conduct or gestures which simulated possession of a deadly weapon, and which would lead a reasonable person to believe that the defendant possessed such a weapon. Consequently, I must first explain, to you, what a—a dead—what deadly weapon means in the law.

"A deadly weapon is any firearm or other weapon, device, instrument, material or substance, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury, or which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury."

To "simulate" means to assume the outward qualities or appearance of often with the intent to deceive. It is a feigned pretended act usually to mislead or deceive.

The State does not have to prove that the defendant actually possessed a real deadly weapon, rather the State must prove beyond a reasonable doubt that the defendant led Rakema Nelson to reasonably believe, by words and conduct or

gestures, that the defendant possessed such a deadly weapon. It is not sufficient that the defendant only made a threat or a reference to a weapon alone. In other words, the State must prove beyond a reasonable doubt that the defendant not only threatened the use—I'm sorry, that—in other words, the State must prove beyond a reasonable doubt that the defendant not only threatened the immediate use of a deadly weapon, but it must also prove beyond a reasonable doubt that the defendant engaged in conduct or gestures which would lead a reasonable person to believe that the defendant did possess an object, which would constitute a deadly weapon, as I just described it to you.

In this case, the State alleges that the defendant told Rakema Nelson "give me your shit, while holding his hand in his waist, and stating do you know what I got here?" You must determine whether the State has proven beyond a reasonable doubt that the combination of words and conduct, or words and gestures created a reasonable belief in the victim to believe the defendant possessed a deadly weapon capable of causing death or serious bodily injury.

Defendant did not object to the court's charge.

After deliberating for twenty-eight minutes, the jury convicted defendant, on the first count of the indictment, of first-degree robbery and, on the second count of the indictment, of simple assault as a lesser-included offense of second-degree robbery. Defendant was sentenced to thirteen years imprisonment on the first-degree robbery conviction, subject to the provisions of the No Early Release Act, *N.J.S.A.* 2C:43–7.2, and to a consecutive term of six months incarceration on the simple assault conviction.

Defendant appealed, alleging, for the first time, that the jury instruction on first-degree robbery lacked a required mental state for simulation of a weapon and that its absence was clearly capable of producing an unjust result.[1] The Appellate Division agreed, and reversed and remanded the cause for a new trial. *Nero, supra,* 393 *N.J.Super.* at 326, 923 *A.*2d 300. In the panel's view, the jury charge as given—without an explicit and separate *mens rea* element for simulated possession of a weapon—constituted plain error warranting reversal. *Id.* at 324, 326, 923 *A.*2d 300.

---

[1] He also filed a pro se brief, additionally alleging that the trial court's failure to mold the first-degree robbery offense into the lesser included offense of attempted robbery denied defendant a fair trial. The Appellate Division did not reach this issue as raised in defendant's pro se brief; neither do we.

We granted the State's petition for certification. 192 *N.J.* 296, 927 *A.*2d 1294 (2007). We also granted the State's motion for a stay of the Appellate Division's judgment, pursuant to *Rule* 2:11–3(d). Further, we granted the Attorney General leave to file a brief and argue as an amicus curiae.

## II.

According to the State, the trial court properly used the Model Charge governing simulated robbery in the first degree, and the Appellate Division "added an extra and unnecessary element" to that charge. In its view, the charge given to the jury fairly conveyed the requirement that defendant's act be purposeful, a more stringent standard than the "knowingly" mental state imported by the Appellate Division. Thus, it argues, its burden was actually greater than what the Appellate Division required, and it met that increased burden.

Defendant cautions that interpreting the robbery statute as written—purportedly without a *mens rea* requirement—would misapply the Legislature's intent to differentiate between an actor who knowingly conveys that he/she has a weapon, whether real or simulated, and one who accidentally conveys the same message. He asserts that it is not sufficient that the victim's belief was reasonable in concluding that a defendant was armed, but also that the defendant must knowingly convey that message. Defendant challenges the State's assertion that the jury instructions as given required that the jury find that defendant's conduct was purposeful. As defendant sees it, "by omitting *any* mental state, the judge made it possible for the defendant to be convicted of armed robbery *solely* on the reasonableness of the victim's perception of his actions *even if the defendant had not a clue that he was accidentally conveying the impression of a weapon.*"

The Attorney General, as amicus, submits that the jury instruction as given was proper, and that the statute is clear and unambiguous on its face. It notes that robbery requires a "purposeful" mental state, and that such state of mind carries over to

the portion of the statute outlawing "threatening the immediate use of a deadly weapon." (Citing *State ex rel. L.W.*, 333 *N.J.Super.* 492, 497, 755 *A.*2d 1245 (App.Div.2000)). Based on that reasoning, the Attorney General concludes that there is no need to invoke the statutory gap-filler provision, urging that there simply is no gap to fill.

### III.

#### A.

▮▮▮ Because defendant did not object to the jury instructions as given, we address first the methodology we must apply. We repeatedly have made clear that, in those instances where a defendant fails to object contemporaneously to a jury charge,

> a plain error standard applies. *R.* 2:10–2; *State v. Bunch*, 180 *N.J.* 534, 541 [853 *A.*2d 238] (2004). As applied to a jury instruction, plain error requires demonstration of "legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." *State v. Hock*, 54 *N.J.* 526, 538 [257 *A.*2d 699] (1969), *cert. denied*, 399 *U.S.* 930, 90 *S.Ct.* 2254, 26 *L.Ed.*2d 797 (1970). The alleged error is viewed in the totality of the entire charge, not in isolation. *State v. DiFrisco*, 137 *N.J.* 434, 491 [645 *A.*2d 734] (1994). In addition, any finding of plain error depends on an evaluation of the overall strength of the State's case. *See State v. Cotto*, 182 *N.J.* 316, 326–27 [865 *A.*2d 660] (2005).
>
> [*Chapland, supra*, 187 *N.J.* at 288–89, 901 *A.*2d 351.]

*See also State v. R.B.*, 183 *N.J.* 308, 321–22, 873 *A.*2d 511 (2005) (explaining that "[a] claim of deficiency in a jury charge to which no objection is interposed 'will not be considered unless it qualifies as plain error' " (quoting *Hock, supra*, 54 *N.J.* at 538, 257 *A.*2d 699)).

That is the yardstick by which we measure defendant's claims on appeal.

#### B.

▮▮ Defendant's complaint, as adopted by the Appellate Division, is simple. He claims that the trial court should have

instructed the jury that the simulated weapon portion of the first-degree robbery charge also requires that the jury find that defendant acted with specific intent. Because that proposition is supported both in the language of the indictment and the plain words of the robbery statute, we agree. We note that the indictment charged that defendant, "in the course of committing a theft did ... *purposely* ... threaten the immediate use of a deadly weapon[.]" (Emphasis supplied.) Similarly, *N.J.S.A.* 2C:15–1(b) defines robbery as "a crime of the first degree if in the course of committing the theft the actor ... *purposely* ... threatens the immediate use of a deadly weapon." (Emphasis supplied.) Indeed, even the State concedes the point: it acknowledges that, in a simulated weapon robbery, "the actor's simulation must be deliberate[,]" highlighting the commonsense notion that "[i]f an act is feigned or pretended, it cannot by definition be accidental."

■ For those reasons, we conclude that, in respect of a robbery threatening the immediate use of a deadly weapon by simulation, the robbery statute, by its own terms and by the application of common logic, requires that the simulation of a deadly weapon be done "purposely." That is, that "[a] person acts purposely with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result[;]" that "[a] person acts purposely with respect to attendant circumstances if he is aware of the existence of such circumstances or he believes or hopes that they exist[;]" and that " '[w]ith purpose,' 'designed,' 'with design' or equivalent terms have the same meaning." *N.J.S.A.* 2C:2–2(b)(1).

In this limited respect, we agree with the Appellate Division's reasoning when it distinguished between the elements required to enhance a second-degree robbery to a first-degree robbery via the use of a simulated weapon and the elements necessary to enhance an eluding charge from a third- to a second-degree crime. We have held that, based on the language of the eluding statute, *N.J.S.A.* 2C:29–2(b), and the persuasive reasoning of *State v. Dixon,* 346 *N.J.Super.* 126, 135–36, 787 *A.*2d 211 (App.Div.2001),

*certif. denied,* 172 *N.J.* 181, 796 *A.*2d 898 (2002), "there is no *mens rea* element to the portion of the eluding statute . . . that enhances a defendant's penal exposure from a third- to a second-degree offense if, while knowingly fleeing or attempting to elude any law enforcement officer, a defendant creates a risk of death or injury to any person." *State v. Thomas,* 187 *N.J.* 119, 137, 900 *A.*2d 797 (2006). We concur with the Appellate Division's determination that the logic undergirding both *Dixon* and *Thomas* was inapplicable here because "[t]he robbery statute is structured differently" from the eluding statute. *Nero, supra,* 393 *N.J.Super.* at 322, 923 *A.*2d 300.[2]

## C.

■ That said, we cannot agree with the Appellate Division's conclusion that the charge given here, although not the subject of a contemporaneous objection, nevertheless was "clearly capable of producing an unjust result," *R.* 2:10–2, and was not harmless. *Nero, supra,* 393 *N.J.Super.* at 326, 923 *A.*2d 300. On the contrary, we conclude that, when viewed as a whole, the jury charge properly conveyed the notion that the jury had to find that defendant purposely threatened his victim with the immediate use of a deadly—albeit simulated—weapon and, hence, was not error.

The trial court instructed the jury on the elements of second-degree robbery as well as the additional element of threatening the immediate use of a deadly weapon, explaining that the coalescence of those elements would enhance the charge to a first-degree crime. It noted that "[e]very crime, as it's defined in the law, contains with[in] it, as an element, a certain mental state" and it defined the mental state of "purposely" both at length and by repeating the precise statutory definition. It made plain that

---

[2] Because we have concluded that the language of the simulated weapon robbery statute explicitly requires a "purposeful" mental state, we reject the Appellate Division's conclusion that the robbery statute is silent in respect of the state of mind required for a simulated weapon robbery and, hence, "the gap-filler provision of the Code imputes a mental state of knowingly." *Id.* at 324, 923 *A.*2d 300 (citing *N.J.S.A.* 2C:2–2(c)(3)).

" '[p]urposely' then means you do something deliberately. You mean to do just that. And, if we could use the same word to define it, we would say someone did that on purpose. We often say that he meant to do it. Did it on purpose." After setting that foundation, the trial court charged that, in respect of the simulated weapon robbery charge, the State was required to prove beyond a reasonable doubt two distinct but interrelated elements: "that the defendant ... threatened the immediate use of a deadly weapon, [and] that the defendant engaged in conduct or gestures which would lead a reasonable person to believe that the defendant did possess an object, which would constitute a deadly weapon[.]" Further, the trial court specifically instructed the jury that "[t]o 'simulate' means to assume the outward qualities or appearance of often with the intent to deceive. It is a feigned pretended act usually to mislead or deceive." Feigned, pretended acts cannot be accidental; by definition, they are purposeful.

Because "any finding of plain error depends on an evaluation of the overall strength of the State's case[,]" *Chapland, supra,* 187 *N.J.* at 289, 901 *A.2d* 351 (citing *Cotto, supra,* 182 *N.J.* at 326–27, 865 *A.2d* 660), we are also mindful that, when viewed in the light most favorable to the State,[3] the proofs at trial were sufficient to satisfy the jury that defendant simulated possessing and reaching for a weapon in the act of trying to steal Nelson's purse: although only Nelson described those of defendant's acts that she understood to mean he was armed, both Nelson and Zimmerman testified that defendant sought to steal Nelson's purse and that,

---

[3] *State v. Brown,* 157 *N.J.Super.* 110, 114, 384 *A.2d* 565 (App.Div.1978) (explaining that, on appeal, "the evidence supporting the jury's verdict [is] viewed in a light most favorable to the State"), *rev'd on other grounds,* 80 *N.J.* 587, 404 *A.2d* 1111 (1979); *see, e.g., State v. Wilder,* 193 *N.J.* 398, 406, 939 *A.2d* 781 (2008) (explaining "the present, well-established standard for determining the sufficiency of the evidence against an accused on a ... motion for acquittal ... requir[ing that] the trial court to determine 'whether, viewing the State's evidence in its entirety ... and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt ... beyond a reasonable doubt.' ")(quoting *State v. Reyes,* 50 *N.J.* 454, 459, 236 *A.2d* 385 (1967)).

after they had fled to the safety of their car, defendant chased after them, only to get into an altercation with yet another restaurant patron.

Thus, taking the jury instructions as a whole against the backdrop of the proofs presented, it cannot be said that there was a "'legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" *Chapland, supra,* 187 *N.J.* at 289, 901 *A.*2d 351 (quoting *Hock, supra,* 54 *N.J.* at 538, 257 *A.*2d 699). We therefore conclude that, taken as a whole, the jury instructions as given by the trial court were sufficient to impart the need to find that defendant's acts in threatening the immediate use of a deadly weapon, even if only simulated, had to be purposeful. To the extent the Appellate Division concluded otherwise, that judgment is reversed.

### D.

Finally, recent changes to the Model Jury Charge for robbery in the first degree are consistent with our conclusions. Effective February 5, 2007—after *Chapland* was decided—the Model Jury Charge for first-degree robbery was amended to add the following paragraph specifically in respect of the use of a simulated weapon:

> Thus, this element [the threat of immediate use of a deadly weapon] may be proven by evidence of an unequivocal or unambiguous simulation of a weapon [or] of a concealed weapon, or by an equivocal or ambiguous gesture coupled with threatening words that completes the victim's impression of a deadly weapon. In other words, an unequivocal or unambiguous simulation means the defendant's acts or gestures are a clear and unmistakable effort to simulate a weapon [or] a concealed weapon. In that circumstance, no further words are needed to prove the element. However, a gesture is equivocal or ambiguous if it is unclear or inconclusive in and of itself. If the gesture is unclear or subject to interpretation, then proof of threatening words are also needed.
>
> [*Model Jury Charge (Criminal)*—Robbery in the First Degree (*N.J.S.A.* 2C:15–1) (editing marks omitted).]

The simulated weapon robbery instruction requires that a defendant engage in "an unequivocal or unambiguous simulation of a weapon [or] of a concealed weapon, or by an equivocal or

ambiguous gesture coupled with threatening words that completes the victim's impression of a deadly weapon." That requirement is satisfied either by "acts or gestures [that] are a clear and unmistakable effort to simulate a weapon [or] a concealed weapon" or "[i]f the gesture is unclear or subject to interpretation, then proof of threatening words are also needed." Either of those instances clearly are premised on the defendant acting "purposely," that is, with the "conscious object to engage in conduct of [a certain] nature or to cause [a certain] result." *N.J.S.A.* 2C:2–2(b)(1). Hence, the *mens rea* element required for a simulated weapon robbery is rightly charged in that language.[4]

## IV.

The judgment of the Appellate Division is reversed, and defendant's first-degree robbery conviction and sentence are reinstated.[5]

*For reversal and reinstatement*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.

---

[4] For the avoidance of doubt, however, we commend the matter to the Model Jury Charge Committee for consideration whether additional clarification or modification is necessary or desirable in light of the conclusions reached in this opinion. *See, e.g., State v. Romero,* 191 *N.J.* 59, 922 *A.2d* 693 (2007) (referring model charge on out-of-court identifications to Model Jury Charge Committee for action implementing direction contained in opinion); *State v. Herrera,* 187 *N.J.* 493, 510, 902 *A.2d* 177 (2006) (referring matter to Model Jury Charge Committee to "consider whether our charge on identification should expressly include a reference to suggestibility as well as any other factor the Committees deem appropriate"); *State v. P.H.,* 178 *N.J.* 378, 400, 840 *A.2d* 808 (2004) (referring child sexual abuse accommodation syndrome charge to Model Jury Charge Committee "for their consideration and suggestions for refinement").

[5] Defendant did not appeal his conviction for simple assault as a lesser included offense of second-degree robbery under count two of the indictment. We, therefore, express no opinion concerning that conviction or its attendant sentence.