**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2492-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

NAHSHAUN K. WHITE,

    Defendant-Appellant.

_____

           Submitted September 20, 2021 – Decided November 10, 2021

           Before Judges Messano and Rose.

           On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 17-02-0393.

           Joseph E. Krakora, Public Defender, attorney for appellant (Kayla Rowe, Designated Counsel, of counsel and on the briefs).

           Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Lucille M. Rosano, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried to a jury, defendant Nahshaun K. White was convicted of robbing a stranger at gunpoint around 8:00 p.m. on November 5, 2016, outside the victim's apartment building in Newark. Following the jury's guilty verdict on all five counts charged in an Essex County indictment,[1] defendant was sentenced to an aggregate prison sentence of ten years, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

On appeal, defendant challenges the admission of the victim's out-of-court "showup" identification, which was made about thirty-five minutes after the incident and a block away from the crime scene. Defendant also belatedly challenges the jury instructions on identification. In the alternative, defendant claims his sentence is excessive, contending for the first time on appeal that the judge should have sentenced him as a second-degree offender pursuant to N.J.S.A. 2C:44-1(f)(2). More particularly, defendant raises the following points for our consideration:

---

[1] Defendant was convicted of first-degree robbery, N.J.S.A. 2C:15-1; second-degree possession of a handgun, N.J.S.A. 2C:39-5(b); second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a); fourth-degree unlawful possession of a defaced firearm, N.J.S.A. 2C:39-3(d); and fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2).

POINT I

THE ADMISSION OF THE MISIDENTIFICATION RESULTED IN [DEFENDANT]'S WRONGFUL CONVICTION AND DEMANDS REVERSAL.

A. The Wade[2] motion judge incorrectly applied the Henderson[3] analytical framework and improperly admitted the unreliable identification.

B. The trial judge's refusal to consider [defendant]'s request to revisit the identification issue was improper.

POINT II

THE IDENTIFICATION INSTRUCTION WAS INCOMPLETE, RESULTING IN PLAIN ERROR THAT DEMANDS REVERSAL.
(Not raised below)

POINT III

THE CUMULATIVE ERROR OF THE ADMISSION OF THE MISIDENTIFICATION EVIDENCE AND THE JURY INSTRUCTIONS REQUIRE REVERSAL OF [DEFENDANT]'S CONVICTION.
(Not raised below)

POINT IV

THE SENTENCE IMPOSED ON [DEFENDANT] SHOULD HAVE BEEN TO A TERM APPROPRIATE

---

[2] United States v. Wade, 388 U.S. 218 (1967).

[3] State v. Henderson, 208 N.J. 208 (2011).

3

TO A CRIME OF ONE DEGREE LOWER THAN THE CRIMES HE WAS CONVICTED OF, GIVEN THE CONSIDERABLE MITIGATING FACTORS.
(Not raised below)

We reject these contentions and affirm defendant's convictions and sentence. But we remand for the limited purpose of correcting the judgment of conviction (JOC) to reflect mitigating factor nine, consistent with the judge's "oral pronouncement of sentence." State v. Rivers, 252 N.J. Super. 142, 147 n.1 (App. Div. 1991); see also State v. Pohlabel, 40 N.J. Super. 416, 423 (App. Div. 1956) (recognizing the oral pronouncement is "the true source of the sentence" whereas the creation of the JOC is "merely the work of a clerk").

I.

A. Defendant's Motion to Suppress the Showup Identification

Because defendant's merits brief primarily focuses on the motion judge's decision to admit the showup identification in evidence, we begin by stating the applicable legal principles before discussing the testimony adduced at the pretrial hearing on defendant's suppression motion.

A showup identification "essentially [is a] single-person lineup," during which "a single suspect is presented to a witness to make an identification." Henderson, 208 N.J. at 259. As the language suggests, showups traditionally involve the witness's observation of a suspect live and in person. Id. at 261.

4 A-2492-18

Generally, a showup identification occurs at the crime scene or shortly afterward. Id. at 259. By definition, a showup is "inherently suggestive" because the victim can only choose from one person, who ordinarily is in police custody. State v. Herrera, 187 N.J. 493, 504 (2006); see also Henderson, 208 N.J. at 259. Nonetheless, a showup identification may be admitted at trial if it is otherwise reliable. See Henderson, 208 N.J. at 303; Herrera, 187 N.J. at 503-04.

As our Supreme Court recognized in Henderson, "the risk of misidentification is not heightened if a showup is conducted immediately after the witnessed event, ideally within two hours." Id. at 259. However, officers "should instruct witnesses that the person they are about to view may or may not be the culprit." Id. at 261.

In Henderson, the Court adopted a framework to determine whether the process utilized by police to obtain eyewitness identification of a perpetrator was reliable or improperly suggestive, thereby requiring a hearing to determine the identification's admissibility. Id. at 288-96. Thereafter, that framework was incorporated in the revised model jury charges on identification. See Model Jury Charges (Criminal), "Identification:   In-Court and Out-of-Court Identifications"  (rev. May 18, 2020); "Identification:   Out-of-Court

Identification Only" (rev. July 19, 2012); "Identification: In-Court Identification Only" (rev. July 19, 2012); see also Henderson, 208 N.J. at 298-99.

The Court held that in assessing the identification procedure, trial courts should consider "system variables," which are factors relating to the identification within the State's control. Henderson, 208 N.J. at. 248, 289. System variables include: lineup or showup construction; blind administration; pre-identification instructions; avoiding feedback; and recording confidence. Id. at 289-90.

The Court also held trial courts should consider "estimator variables," which are factors over which the State has no control. Id. at 291, 294. Estimator variables relate to the witness, the perpetrator, or the event itself. Id. at 261. They include: stress; weapon focus; duration of the witness's observation of the perpetrator; distance and lighting; the perpetrator's appearance, including whether a mask or disguise was employed; racial bias; memory decay; and the speed of an identification. Id. at 261-72.

In the present matter, the Wade/Henderson hearing was held over two non-consecutive days, before two motion judges. On the first day of the hearing in

June 2017, the State presented the testimony of Frank Richiez, a detective assigned to the Newark Police Department's Special Enforcement Division.

At approximately 8:30 p.m. on November 5, 2016, Richiez, his partner, and other officers were dispatched to a robbery in progress on Martin Luther King (MLK) Boulevard. Within ten minutes, Richiez saw a man, who matched the dispatcher's description of the suspect. Richiez and his partner pursued defendant on foot and arrested him within "a block" of the crime scene.

While Richiez was placing defendant into the patrol car, he heard the victim, Aaron Harris, state: "That's him, that's him." Richiez then turned and saw Harris point at defendant. Richiez did not recall how much time had passed before Harris arrived at the arrest location. Neither Richiez nor any other officer said anything to Harris before the identification was made. Richiez did not "advise the victim that somebody was in custody that he was going to be observing."

At the conclusion of the detective's testimony, the State argued police did not conduct a showup procedure here, where the victim's identification was "spontaneous." Referencing the victim's prior statement to police, defendant countered that "the detective ask[ed] [Harris] about . . . the identification process." Because the victim was not available to testify that day, the judge

adjourned the hearing, finding "apparently there's a factual dispute as to what transpired."

The hearing continued in April 2018, with the victim's testimony before a different judge, defendant's now-retained counsel, and a different assistant prosecutor. Harris said he called the police about five or ten minutes after the robbery and thereafter saw police cars, with lights and sirens activated, driving down Seventh Avenue toward MLK Boulevard. About twenty or twenty-five minutes after the robbery, the police contacted Harris, requesting his presence at Seventh Avenue and MLK Boulevard. On cross-examination, Harris denied he was told to respond to that location "to make an identification."

Instead, when Harris arrived, an officer asked whether he could "make an identification." Confirming he could do so, Harris identified defendant after the officer "pulled the suspect out of the other car." No one was "talking or coaching [Harris] through" the identification process. On cross-examination, Harris initially stated he did not recall whether police said the person they were pulling out of the police car "could be the suspect or could not be." However, when the judge repeated the question, Harris said the officer did so instruct him.

Following cross-examination, the motion judge determined Harris's testimony that police asked him whether he could "make an I.D.," and removed

defendant from the police car, "sound[ed] like a showup." Accordingly, the judge permitted the State to reopen the hearing, and elicit testimony concerning the estimator variables under Henderson.

Harris testified that at the time of the robbery, he was waiting outside his building for a taxicab. He was listening to music on his Beats headphones when he saw defendant walking toward him with another man. No one else was in the area. The area was lit, but "not well lit."

When defendant first approached Harris, the two men were "practically facing each other" about one foot apart; defendant was so close that Harris "could smell him." Defendant had his hands in his pockets when he approached Harris, demanding: "Give me everything." But Harris responded: "Oh, you're gonna have to show it to me." Acknowledging it was "stupid" to react that way, Harris claimed he had witnessed robberies and knew perpetrators "get away with" the crime by placing their hands in their sleeves. Until defendant pulled the gun out and pointed it toward Harris's head, he was not 100 percent certain defendant had a gun. Defendant took Harris's headphones, cellphone, Apple watch, and wallet containing three dollars, including his "lucky two-dollar bill." The incident lasted about thirty seconds.

9

According to Harris, the gun was black, "like a .380." He described defendant as a black male, with a "little mustache," wearing a gray hoodie, with dreadlocks "hanging out his hood." Harris estimated defendant's height was between six feet, three inches and six feet, five inches. Defendant appeared slightly older than Harris, who was around twenty or twenty-one years old at the time.

On cross-examination, Harris acknowledged he was "under stress" during the robbery. However, Harris was "a hundred percent" positive defendant was the man who robbed him.

At the conclusion of Harris's testimony, defense counsel argued the victim was not credible because his testimony was inconsistent with his prior statement to law enforcement. Defendant further argued the police failed to issue proper instructions prior to the showup procedure. Referencing Harris's testimony, his prior statement, and police reports, the prosecutor countered that the victim's identification was sufficiently reliable: "It wasn't cross-racial. They were face-to face. The identification happened very quickly afterwards."

Following arguments, the judge issued a cogent oral decision, denying defendant's motion. Pertinent to this appeal, the judge acknowledged the testimony of Harris and Richiez differed as to whether, prior to viewing

10

defendant, Harris was instructed "that the perpetrator may or may not be present." The judge also found defense counsel demonstrated Harris's testimony was inconsistent with his prior statement as to whether Harris "was approached from behind by the robber," or whether Harris observed the robber approach him.

Although the judge found those inconsistencies demonstrated "possible bias towards . . . wanting to get the I.D. in," the judge was not persuaded that "those inconsistencies [we]re sufficiently . . . egregious to warrant a finding that [Harris] was not credible" regarding his initial observations during the robbery. Those observations were made when the men were "face-to-face," and defendant was "so close" that Harris "could smell him."

Noting the robbery "was stressful," the judge nonetheless found the event "was not so stressful to preclude rational thought, rational perception." Whether or not Harris observed defendant "all the way from the corner as [he] approached," the thirty-second duration of the robbery, during which the gun was not drawn until the last moments, was "a substantial period of time." The judge therefore credited Harris's testimony, noting the victim observed defendant for thirty seconds, including the time during which Harris assumed defendant was unarmed.

A-2492-18

Turning to the system variables, the motion judge found "no evidence of impermissible feedback"; the witness was "100 percent" confident in his identification of defendant; and only one viewing took place. However, the judge found "insufficient evidence" that police issued pre-identification instructions, which "militate[d] toward a suggestive procedure." The judge further recognized, that after Harris "arrived at the scene" and "was asked if he could make an identification[, a] rational person . . . would presume that the next person he was . . . shown would be the person, who . . . the officers believed was . . . the perpetrator."

Finding the showup procedure was suggestive, the judge then assessed the applicable estimator variables and noted several factors weighed in favor of the identification's reliability. Among those factors, the judge found: the weapon was not displayed until the end of the event, thereby affording Harris "sufficient opportunity to make a rational – although stupid – decision to call for the gun"; the amount of time Harris was face-to-face with his assailant; Harris's initial description of a "tall, black male" with "dreads" was consistent with his subsequent identification of defendant; there was no time for memory delay; no race bias; and Harris was "100 percent" certain of his identification.

12

After considering the estimator variables, the motion judge concluded the showup identification was not impermissibly suggestive and was "reliable within the meaning of Henderson." Accordingly, the judge denied defendant's motion and issued an accompanying order on April 4, 2018.

On appeal, defendant maintains the showup identification should have been suppressed. Defendant contends the motion judge "ignored key systemic and estimator factors and assigned too much weight to marginally supported estimator factors." In essence, defendant argues the motion judge failed to articulate the weight he assigned to the systemic factors, which underpinned his decision that the showup was suggestive. Defendant further asserts that the judge's assessment of estimator variables was not supported by the record. We are unpersuaded.

When reviewing an order denying a motion to bar an out-of-court identification, our standard of review "is no different from our review of a trial court's findings in any non-jury case." State v. Wright, 444 N.J. Super. 347, 356 (App. Div. 2016). We accept the trial court's findings provided they are "supported by sufficient credible evidence in the record." State v. Watts, 223 N.J. 503, 516 (2015). However, we do not defer to a trial court's interpretation of the law, which we review de novo. Ibid.

Having considered defendant's contentions in view of the applicable law and the motion record, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We affirm substantially for the reasons set forth by the motion judge in his well-reasoned decision. We therefore discern no basis to disturb his decision. Watts, 223 N.J. at 516.

B. Defendant's Motion For Reconsideration

The matter was tried before another judge over five days in late August and early September 2018. In addition to Harris, the State presented the testimony of six law enforcement witnesses, and a rebuttal witness. Defendant testified on his own behalf. Several items were admitted in evidence, including the dispatch recording, which was played for the jury during the testimony of Richiez's partner, Detective Christopher Moss.

According to Moss, he and Richiez were a few blocks away from MLK Boulevard and Seventh Avenue, when they heard dispatch advise that the robbery suspects[4] were seen walking in that direction and that one of them was armed. When the officers pulled up to that location, defendant ran and discarded a loaded .380-caliber, semi-automatic handgun.

---

[4] We glean from the record that the second suspect was not arrested.

Pertinent to this appeal, and similar to Richiez's testimony at the suppression hearing, none of the law enforcement witnesses testified that instructions were given to Harris prior to his identification of defendant. Further, the trial testimony revealed that when Harris first arrived at the arrest location: he identified himself; listed his stolen items; and identified defendant – before he was asked to identify the items seized during a search incident to defendant's arrest. Those items included an iPhone, Beats headphones, Apple watch, two-dollar bill, and one-dollar bill. Harris positively identified all items, except the iPhone.

During the charge conference, defense counsel orally moved for reconsideration of the motion judge's ruling on his suppression motion. Noting the trial judge had heard "a lot more testimony" than the motion judge, defense counsel argued the identification should be suppressed because the showup "was overly suggestive and the warning required by the instruction . . . was not given." In sum, counsel argued Harris "was directed by the dispatcher . . . to the location where . . . he was led to understand that there would be the person who committed the offense, [and] no instructions were given." Further, when Harris made the identification, defendant was handcuffed and standing "in close proximity to the rear of a patrol car."

After reviewing the transcript of the motion judge's decision, the trial judge preliminarily found she was bound by law of the case, unless defense counsel could demonstrate that the motion judge failed to consider evidence. The trial judge afforded counsel overnight the opportunity to file a written submission delineating his supplemental argument.

The following day, the trial judge denied defendant's reconsideration motion, initially finding the motion was time-barred. Nonetheless, the trial judge denied the motion on the record, concluding her review of the motion transcript revealed: "The issue of what the complaining witness was or was not told . . . before he saw . . . defendant, was addressed and included in [the motion judge's] opinion."

For the first time on appeal, defendant asserts there existed "confusion" as to whether police asked Harris to identify his stolen property before or after he identified defendant. During his prior statement to police, Harris said the police asked him to identify his property after he identified himself as the victim. At trial, Harris testified that the police showed him his property after he identified defendant. Defendant now claims "either sequence of events bring the feedback variable into play," which the motion judge found inapplicable in his assessment of the estimator variables. We generally refuse to consider issues

not presented to the trial court, State v. Alexander, 233 N.J. 132, 148 (2018), but we address defendant's claim here for purposes of complete review.

As a preliminary matter, we disagree with the trial judge's conclusion that defendant's reconsideration motion was time-barred, or that she was bound by the motion judge's decision. Because the order was interlocutory, the trial court may, in its discretion, review the ruling "at any time before the entry of final judgment," see State v. Puryear, 441 N.J. Super. 280, 293 (App. Div. 2015), "in the interests of justice," State v. Timmendequas, 161 N.J. 515, 554 (1999) (noting the absence of an explicit rule for reconsideration motions in criminal matters, but holding that such motions are permitted in criminal matters).

However, a reconsideration motion "is not to be granted lightly and the grounds for reconsideration are generally limited." Puryear, 441 N.J. Super. at 294. "The proper object of reconsideration is to correct a court's error or oversight." Ibid. It "cannot be used to expand the record and reargue a motion." Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008). Guided by these criteria, defendant failed to demonstrate that reconsideration was warranted here.

The events at the scene transpired quickly. According to Moss:

> I asked [Harris] to identify himself. You know,
> he told me his name. He described . . . the stuff that

had been taken. And he said that's the guy right there; that's the guy. So, I said, okay, and I walked back over towards my partner, [Richiez, who] had the suspect. We searched him. [Defendant] had some stuff on him. And it happened to match the proceeds that the victim was telling me was taken which was [sic]. . . some Dr. Dre headphones, a two-dollar bill, a one-dollar bill, and an iWatch and an iPhone as well.

. . . .

After getting the items off of the suspect, I walked back over to the victim and I showed him the objects. He positively [identified] everything except for the iPhone . . . as being his [property].

We discern no confusion regarding the sequence of events. The trial testimony of Moss, as corroborated by Harris and Richiez, demonstrates that Harris made his identification first and then was shown the items police recovered from defendant. Nor is there any evidence in the trial record that the officers provided Harris "any information or feedback about the suspect or the crime, before, during, or after the identification procedure," Henderson, 208 N.J. at 290, during that short time span. Indeed, there simply is no indication in the trial record that Harris's identification of defendant was ever confirmed by police. We therefore discern no basis to disturb the motion judge's decision.

II.

For the first time on appeal, defendant argues the trial judge's instructions regarding identification were flawed. Defendant contends the judge failed to include "three important factors" in her identification charge: "prior description of the perpetrator; confidence and accuracy; and feedback." See Model Jury Charges (Criminal), "Identification: In-Court and Out-of-Court Identifications" (eff. Sept. 4, 2012).[5] The State counters that any error in the charge was invited by defendant, who agreed with the judge's decision to include only "stress, duration, weapon focus, and lighting" as the applicable estimator factors, and did not object after the charge was issued.

When a defendant fails to object to an error regarding jury charges, we review for plain error. State v. Wakefield, 190 N.J. 397, 473 (2007) (holding that under Rules 1:7-2 and 2:10-2, "the failure to object to a jury instruction requires review under the plain error standard"). "Under that standard, we disregard any alleged error 'unless it is of such a nature as to have been clearly

---

[5] Following the Court's decision in State v. Anthony, 237 N.J. 213, 234-35 (2019), the model jury charge was revised. See Model Jury Charges (Criminal), "Identification: In-Court and Out-of-Court Identification" (rev. May 18, 2020). Those revisions do not pertain to the issues on appeal in this case, which was tried before Anthony was decided.

A-2492-18

capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2).

Plain error, in the context of jury instructions, is: "'Legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" State v. Camacho, 218 N.J. 533, 554 (2014) (quoting State v. Adams, 194 N.J. 186, 207 (2008)). Further, the error must be viewed in totality of the entire charge, not in isolation. State v. Chapland, 187 N.J. 275, 289 (2006).

"[A]ny finding of plain error depends on an evaluation of the overall strength of the State's case." State v. Nero, 195 N.J. 397, 407 (2008) (quoting Chapland, 187 N.J. at 289). When the trial court fails to issue an identification instruction, "[t]he determination of plain error depends on the strength and quality of the State's corroborative evidence rather than on whether defendant's misidentification argument is convincing." State v. Cotto, 182 N.J. 316, 326 (2005).

At the outset, we are not convinced that defendant's failure to object to the instruction charge issued by the judge constituted invited error. See State v. Bailey, 231 N.J. 474, 490 (2018) (declining to apply the doctrine of invited error

where defense counsel asked the court to comply with the model jury charge and failed to object to the jury charge that was given).

During the charge conference, the trial judge informed counsel she would charge "the standard language" set forth in the model jury charge on in-court and out-of-court identifications and the showup procedure portion of the charge. The judge then asked defense counsel, whether "the factors that will be . . . read to the jury include stress, duration, weapon focus, and lighting?" Defense counsel responded: "Yes." Having considered the charge as a whole, State v. Torres, 183 N.J. 554, 564 (2005), we are not persuaded that the omission of the factors defendant now deems relevant did not have the capacity to bring about an unjust result. R. 2:10-2.

For example, the trial judge instructed the jury it was "free to consider any other factor based on the evidence or lack of evidence in the case that you consider relevant to your determination"; that it may consider "all of the circumstances in this case including all of the testimony and documentary evidence, in determining whether a particular identification made by a witness is accurate"; and, when assessing credibility of a witness, the jury may consider "whether the witness made any inconsistent or contradictory statements." Taken as a whole, those instructions were similar to the relevant portion of the prior

21

description of a perpetrator factor, which states the jury may find relevant: "whether the witness's testimony at trial was consistent with, or different from, his/her prior description of the perpetrator."

Defendant contends the judge also failed to charge the confidence and accuracy factor, which provides, in pertinent part: "As I explained earlier, a witness's level of confidence, standing alone, may not be an indication of the reliability of the identification. Although some research has found that highly confident witnesses are more likely to make accurate identifications, eyewitness confidence is generally an unreliable indicator of accuracy."

But the charge as given closely followed the general portions of the identification charge:

> Eyewitness identification evidence must be scrutinized carefully.
>
> . . . .
>
> Although nothing may appear more convincing than a witness's categorical identification of a perpetrator, you must critically analyze the testimony. Such identifications, even if made in good faith, may be mistaken. Therefore, when analyzing such testimony be advised that a witness's level of confidence standing alone may not be an indication of the reliability of the identification.

22

Given the similarity between these instructions, defendant was not prejudiced by the omitted language.

As stated, there is no evidence in the record to suggest that Harris received feedback from the officers. In any event, the trial judge instructed the jury to "consider everything that was done or said by law enforcement to the witness during the identification process." Arguably, the jury was implicitly instructed to consider suggestive comments or actions by the police. We presume the jury followed the trial judge's instructions. See State v. Vega-Larregui, 246 N.J. 94, 126 (2021).

Ultimately, the trial evidence substantially corroborated Harris's identification. See Cotto, 182 N.J. at 326-27. Defendant matched Harris's description to police and was arrested just blocks away from the crime scene, shortly after commission of the crime, with Harris's stolen items in his possession. We therefore discern no error, let alone plain error, in the omission of the factors now raised.

Accordingly, we reject defendant's contention, raised in point III, that the cumulative effect of the errors committed during his trial warrants reversal. Defendant has failed to demonstrate any error or pattern of errors, rising to the level, either singly or cumulatively, that denied him a fair trial. "A defendant is

entitled to a fair trial but not a perfect one." State v. R.B., 183 N.J. 308, 334 (2005).

## III.

Finally, defendant argues the mitigating factors warranted a sentencing term appropriate to a crime one degree lower than "the most serious crimes of which he was convicted." We disagree.

In reviewing a trial judge's sentencing determinations, we employ a deferential standard. State v. Fuentes, 217 N.J. 57, 70 (2014). We must affirm the sentence unless:

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

The trial court may not ignore "mitigating factors that are called to the court's attention . . . , and when amply based in the record, . . . they must be found." State v. Case, 220 N.J. 49, 64 (2014) (citation omitted).

When a sentencing judge "is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice

24

demands," the judge may sentence a defendant who has been convicted of a first-or second-degree crime "to a term appropriate to a crime of one degree lower than that of the crime for which he was convicted." N.J.S.A. 2C:44-1(f)(2). In evaluating whether to impose a downgraded sentence under the statute, a sentencing court "must apply a two-step process[:] The judge must be clearly convinced that the mitigating factors substantially outweigh the aggravating ones and that the interest of justice demands a downgraded sentence." State v. Rice, 425 N.J. Super. 375, 384 (App. Div. 2012) (internal quotation marks omitted).

"The decision to downgrade a defendant's sentence in the interest of justice should be limited to those circumstances in which defendant can provide 'compelling' reasons for the downgrade." State v. Briggs, 349 N.J. Super. 496, 502 (App. Div. 2002) (quoting State v. Megargel, 143 N.J. 484, 501-02 (1996)). The "compelling . . . reasons must be in addition to, and separate from, the 'mitigating factors which substantially outweigh the aggravating factors,' that the trial court finds applicable to a defendant under the first prong of [N.J.S.A. 2C:]44-1(f)(2)." Id. at 502.

To place defendant's newly-minted arguments in context, we reiterate that he was convicted of first-degree robbery, N.J.S.A. 2C:15-1 (count one); second-

degree possession of a handgun, N.J.S.A. 2C:39-5(b) (count two); second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count three); fourth-degree unlawful possession of a defaced firearm, N.J.S.A. 2C:39-3(d) (count four); and fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2) (count five), for the armed robbery of a stranger.

Prior to imposing sentence, the judge ordered the appropriate merger of defendant's conviction on count two with count three. The judge then imposed the minimum sentence on defendant's first- and second-degree convictions: ten years' imprisonment, subject to NERA on count one; and ten years' imprisonment, with a five-year mandatory prison term under the Graves Act, N.J.S.A. 2C:43-6(c), on count three. The judge imposed concurrent sentences on all counts. Accordingly, defendant was sentenced to the lowest possible aggregate prison sentence of ten years, subject to NERA.

In imposing sentence, the judge considered defendant's employment history and letters submitted to the court that attested to defendant's character. The judge found aggravating factor nine, N.J.S.A. 2C:44-1(a)(9) (general and specific deterrence); and mitigating factors seven, N.J.S.A. 2C:44-1(b)(7) (defendant's lack of prior criminal history), and nine, N.J.S.A. 2C:44-1(b)(9) (defendant is unlikely to reoffend). The judge declined to find mitigating factor

eight, N.J.S.A. 2C:44-1(b)(8) (defendant's conduct was the result of circumstances unlikely to recur). Although the judge recognized defendant had no prior criminal history and was employed at the time of the offense, she reasoned the robbery "was a crime of opportunity" and the commission of the offense with a weapon underscored defendant's "intent to either commit a crime or be armed against someone else who was committing a crime."

Based on our review of the record, we are satisfied the trial judge's refusal to find mitigating factor eight was not an abuse of discretion. See Rice, 425 N.J. Super. at 382-83 (recognizing mitigating factor eight applies when a defendant accepts responsibility and shows a willingness to remove himself from circumstances that may lead to similar unlawful conduct). Nor does anything in this record convince us that the judge erred in sua sponte failing to sentence defendant one-degree lower on the robbery conviction.

Affirmed, but remanded solely to correct the JOC to reflect the judge's finding of mitigating factor nine.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION